## MERCHANTS NATIONAL BANK OF ROME *v.* ARMSTRONG, executrix.

1. This court will not consider questions raised by a bill of exceptions assigning error on the provisions in a decree rendered by a judge of the superior court in accordance with an auditor's report, when there has been no exception to or error assigned on the judgment of the court overruling all objections to the report and approving the same.

2. When attorneys at law have represented a defendant in an equitable suit that has been referred by an order of the superior court to an auditor under the laws of this State, and by virtue of their professional services in the trial of the case before the auditor have obtained for their client on a counter-claim against the plaintiff an award or judgment for money or other assets of value in the custody of the court or its officers or suitors, the attorneys have upon such property a lien which it is the duty of that court to protect and enforce, upon an application made by the attorneys to the court, showing reason to apprehend distribution of the assets without payment of their fee unless the court intervenes for their protection.

(a) But when an intervention for this purpose has been brought by two firms of attorneys after the filing of the report in favor of their client by the auditor, and to this intervention there has been filed by their client a demurrer, and also an answer which not only denies that the services rendered by the attorneys were worth the amount of fees claimed by them, but also claims that only one of the firms represented respondent in the case, that it had been fully paid its fees, and further contends that

the relation of attorney and client had never existed between the other firm and respondent, it is error for the judge to embody in his decree upon the auditor's report a provision establishing and setting up the lien claimed by the attorneys, and practically leaving open only the question as to the amount of their fees, to be ascertained on the trial of the issue formed by the intervention and the answer thereto; it appearing that none of the issues of law or fact raised by the interlocutory proceeding touching the fees have ever been submitted to or passed upon by the auditor, and that they have not been previously adjudicated or determined by the court.

(*b*) When the decree was entered up in such a case, the proper course for the judge was to pass such an order as would prevent a distribution of the entire assets upon which the lien was claimed, until there had been a final trial of the issues presented by the intervention of the attorneys and the answer of the respondent thereto.

Argued March 25,—Decided May 29, 1899.

Exceptions to auditor's report.    Before Judge Fite.    Floyd superior court.    May 5, 1898.

*Dean & Dean,* for plaintiff in error.
*Reece & Denny* and *Fouche & Fouche,* contra.

LEWIS, J.    An equitable petition was brought to the July term, 1895, of Floyd superior court, by R. T. Armstrong in his lifetime against J. King and the Merchants National Bank of Rome, Ga.    Pending the suit the plaintiff died in August, 1896, and Janie W. Armstrong, his executrix, was duly made a party plaintiff.    The defendants filed their answers, and the case was referred to W. T. Turnbull as auditor, with directions that all questions of law and fact involved therein be submitted to him for investigation and report, and that he make a separate report as to law and facts respectively, with his findings thereon.    On June 8, 1897, the auditor filed his report to the court.    Exceptions both of law and fact were filed on the part of the plaintiff, but the same were, after consideration, stricken and overruled by the court, and, upon motion of defendants' counsel, a final decree was rendered in the cause, signed by the judge of the court.    To the granting of this decree the Merchants National Bank, plaintiff in error, excepts and assigns the same as error.    For assignments of error it is alleged:    (1) "The eighth paragraph of said decree is error, in that it failed to set up and establish a lien for the sum

therein adjudged in favor of the Merchants National Bank
against Janie W. Armstrong as executrix of the estate of R. T.
Armstrong, deceased, on the R. T. Armstrong half-interest
in the claim and suit of Danforth & Armstrong against the
Tennessee & Coosa Railroad Company of Alabama, pending
in the city court of Gadsden, in the county of Etowah, in the
State of Alabama; said eighth paragraph giving only a judg-
ment against the estate of R. T. Armstrong for the sums therein
found in favor of said Merchants National Bank, without
creating any special lien whatever on said Alabama claim."
(2) "The tenth paragraph of said decree was error, in that it
does not restrain Janie W. Armstrong as executrix, and her
agents and attorneys, from incumbering or in anywise inter-
fering with said claim of Danforth & Armstrong until the
sums named in the eighth paragraph in said decree are paid,
but only restrains her from interfering until the sums named
in the ninth paragraph are paid.   This defendant insists that
said restraining order should have extended to the sums ad-
judged in its favor in the eighth paragraph, as well as those
set forth in the ninth paragraph of said decree."   (3) "The
defendant, the Merchants National Bank, further assigns error
and says that the eleventh paragraph of said decree is error
in toto, for that the same is not germane to the issues involved
in said litigation and is not based upon the findings of the
auditor, and involves matters not submitted to the auditor and
in no way in issue in the case.   Said paragraph undertakes to
set up a lien on the funds involved in this litigation without
any sufficient proof of the employment of said attorneys in
behalf of this defendant in said litigation.   Especially is there
no proof or finding by the auditor that Messrs. Fouche &
Fouche were the attorneys of this defendant, the Merchants
National Bank, by employment on the part of said bank; and
no such question was submitted to said auditor, or in any way
connected with the case so that he could have found thereon;
and the facts touching this matter have not been passed upon
by the court or by a jury.   Wherefore this defendant says it
was error to pass a decree containing said eleventh paragraph
as written therein."   That portion of the decree complained

of in the first assignment of error adjudges that the Merchants National Bank of Rome, Ga., recover of Janie W. Armstrong as executrix of R. T. Armstrong, deceased, to be levied of the goods and chattels, lands and tenements of said deceased, in her hands to be administered, the principal sum of $5,146.37, besides interest, and that the bank have execution for said amount of principal and interest. Another paragraph in the decree, following the one just above mentioned, also adjudges in favor of the Merchants National Bank, as the assignee of J. King, against Janie W. Armstrong as executrix, to be levied of the goods and chattels, lands and tenements of deceased, the sum of $12,500 principal, and $3,372 interest, and the judge decrees that these sums are a charge and a special lien on the one undivided half-interest of R. T. Armstrong and his estate in the suit and judgment mentioned in the assignment of error as pending in the city court of Gadsden, in Etowah county, Alabama. The tenth paragraph of the decree, excepted to in the second assignment of error, perpetually enjoins Janie W. Armstrong, executrix, her agents and attorneys, from collecting, incumbering, or in anywise interfering with the aforesaid interest in the Danforth & Armstrong claim and suit until the sums named in the ninth paragraph of the decree have been fully paid off and discharged.

1. It will be observed that no exception is filed to these portions of the decree on the ground that they were not authorized by the auditor's report, or that they were not fully adjudicated and determined by the auditor. By reference to his report touching this particular branch of the litigation, we see nothing in the decree that is not in accord with the auditor's finding. He reports due to the Merchants National Bank on the contract of Gaboury, Armstrong & Co. (of which firm it seems the deceased was a member) the sum of $12,500 principal, besides interest, and that the bank is entitled to a lien as collateral security for these sums on the one-half undivided interest of R. T. Armstrong or his estate in the suit and judgment above mentioned as existing in the Alabama court, and that the bank has a right to collect the same and deduct the amount found by the auditor. The decree of the court was

entered up accordingly as to these specified sums, about which no complaint is made. It is insisted, however, that the Merchants National Bank is entitled to a similar decree, creating a special lien upon the suit and judgment above mentioned, and an injunction as to the other amount found in its favor by the auditor. It will be seen from the auditor's report, however, that he finds no special lien for the other sum, but his finding is simply a general one, that the bank is entitled to a judgment against the plaintiff in the suit for the amount, and a decree was accordingly entered by the court, and only a general judgment was given the bank for this last-named amount covered by the auditor's report. It does not appear from the record that the bank filed any exceptions whatever to the auditor's report, either of law or fact, the only objections filed being by the plaintiff below, and to the judgment of the court overruling these objections it appears that no exceptions were filed by any party in the case. Section 4595 of the Civil Code declares that, in equity causes where an auditor is appointed, exceptions of fact shall be passed upon by a jury when approved by the judge. "The report shall be taken as prima facie correct, and the burden be upon the party making the exceptions, who shall have the right to open and conclude the argument." Section 4601 declares: "If the report is not excepted to, the court shall frame a verdict or decree thereon as may be proper. If exceptions are filed, after the same have been considered and passed upon by the court or jury, or both, as the case may be, the court shall order a verdict or a decree in accordance with the report, and the changes made by court or jury, unless the same shall require a recommitment." Of course, if objections to a report are overruled by the judge, and the auditor's report has not been modified either by judge or jury, in an equity cause it obviously becomes his duty to enter a decree in accordance with the findings of the auditor. The only way to take advantage of any alleged error of the auditor in his rulings on the law or in his findings of fact is to file exceptions thereto, as indicated by section 4589 et seq. of the Civil Code, which shall clearly and distinctly specify the errors complained of; and the only way

provided by law by which this court can review such alleged errors is by exceptions to and proper assignments of error on the judgment of the court below dealing with the objections filed to the auditor's report.    Those portions of the decree, therefore, complained of in the first two assignments of error in the bill of exceptions, being in accord with the auditor's report, are not illegal.    It is unnecessary to consider the question as to whether or not the auditor erred in his findings; for even if the record clearly discloses that he committed error, it can not be reviewed except as above indicated, any more than a judgment of a court, founded upon and following the verdict of a jury, can be reviewed by direct bill of exceptions to this court without any steps whatever being taken to review and have corrected the verdict itself.

2. It appears from the record, that on March 18, 1898, after the auditor's report was filed, but before the decree of court thereon was rendered, Reece & Denny and Fouche & Fouche filed their interventions in this case, claiming that they were the sole representatives of the defendants, the Merchants National Bank and King; that they filed not only proper defenses for the defendants, but also a cross-petition for them against the plaintiff; that the auditor appointed in the cause had found for the defendants against the plaintiff and the late partnership of Gaboury & Armstrong a liability amounting on July 7, 1895, to $38,426.03, and a liability against the estate of R. T. Armstrong amounting on said date to the sum of $13,500; that, pending the trial before the auditor, King transferred to his codefendant all his interest in the subject-matter of the suit, and the bank took the same subject to petitioners' rights and liens as attorneys at law; that the auditor found that the bank had in its hands the sum of $21,667.21, the net sum in cash received from the sale of the railroad in Florida referred to in said suit against defendants, and that there is besides said sum due to defendants $13,500 and interest; and that defendants hold as collateral security the said last-named valuable chose in action against the estate of R. T. Armstrong, deceased.    The intervenors further claimed that said money has been saved to the bank and said collateral set up and established by the serv-

ices of petitioners as attorneys at law in the case, and they are entitled to a lien on the same for said services, which are reasonably worth $7,500; that the collateral and cash are in the hands of the bank, and the bank, by order and decree of the court, is prohibited from paying out or disposing of the same; that King is insolvent and has no interest in the cash; that the bank has ceased to do business and is in process of liquidation; and that unless restrained by the court it will pay out the money to its creditors and stockholders. The prayer of the intervention is, that the bank be enjoined from paying out the sum now in its hands and from disposing of its collateral until petitioners' fees are fixed and paid, and that it be required to pay into court the sum of $7,500, there to remain until petitioners' fees are ascertained and paid, and that such fees be paid when ascertained, as is usual in such cases; also for general relief. On the 18th day of March, 1898, a rule nisi was issued by the judge, requiring the bank to show cause at a certain time and place why the relief prayed for should not be granted, and temporarily restraining the bank as prayed until the further order of the court. To this intervention the bank filed a demurrer, and also an answer denying its liability for the attorney's fees. The third and only remaining assignment of error in the bill of exceptions to be considered is as to the following portion of the decree of the court: "It further appearing to the court from the report of the auditor that there were present at the hearing of said case before the auditor attorneys for the defendants as follows: for the defendant J. King, Fouche & Fouche, and for the defendant the Merchants National Bank of Rome, Georgia, Reece & Denny and Fouche & Fouche; and that said attorneys have filed an intervention in this case, praying that their fees be ascertained and allowed and their lien be preserved on the funds in the hands of the Merchants National Bank of Rome, Ga., it is therefore ordered and decreed that liens are hereby set up and declared in favor of said attorneys for such sums as may be ascertained to be properly due to them, upon the funds arising from and by virtue of this decree, and that, after paying the costs of this suit, said attorneys' fees be paid prior to all other claims and demands, in such

manner as may hereafter be decreed in the intervention filed by them."

It seems to be generally recognized by the courts, both in this country and in England, that attorneys have by virtue of the common law a lien for fees upon property in their hands recovered for their clients. Such a lien has been recognized as existing upon notes, bonds, and other papers of a client in the possession of his attorney for collection or other professional service; but, technically speaking, this is not so much a lien upon such papers as an equitable right which the courts recognize in the attorney to retain such choses in action until his fees for professional services are paid. Such a lien did not exist at common law, however, upon suits brought for clients, or upon judgments, awards, or decrees obtained for them; but the common-law rule has been recognized as extending the attorney's lien not only to proceeds in the hands of the attorney collected for the client, but also to such funds or assets in the hands of the opposite party or in the custody of the court and subject to its equitable jurisdiction. It has accordingly been held that "where a fund is brought into a court of equity through the services of an attorney, who looks to that alone for his compensation, although his interest can not technically be called a lien, he is regarded as the equitable owner of the fund to the extent of the reasonable value of his services, and the court administering the fund will intervene for his protection, and award him a reasonable compensation to be paid out of it." 3 Am. & Eng. Enc. L. (2d ed.) 458, and authorities cited in note 5. We do not understand, however, counsel for plaintiff in error to deny the existence of the lien claimed by the attorneys in this case, provided the facts alleged in their petition are true. The lien of attorneys in such matters is definitely fixed by statute in this State, and has been repeatedly recognized by decisions of this court. Civil Code, § 2814; *Fry* v. *Calder,* 74 *Ga.* 7; *Lovett* v. *Moore,* 98 *Ga.* 158; *Coleman* v. *Austin,* 99 *Ga.* 629. But we gather from the grounds of the demurrer filed to the intervention that it is insisted by counsel for plaintiff in error, that attorneys representing a defendant in a case can not in this way enforce their lien against their client; that they can not,

by separate intervention ·in the same cause, seek a judgment against their client establishing and enforcing their lien for fees arising from services rendered defendant in the original action. The ground for the court's interference in such matters, we think, is based upon sound equitable principles. Whenever funds or other assets have been awarded by judgment of a referee or auditor whose report is about to be made a decree of the court, that court has the inherent power to so shape its action as to protect whatever interest its officers and the suitors in the case may have in such assets. Among its officers are the attorneys of record in the case, and whenever they show a lien for fees on the property involved, or a lien inchoate in its nature which will become perfected on the rendition of the decree, and further show that there is danger of a distribution of the fund or a disposition of the assets without payment of their lien thereon, it becomes the duty of the court to intervene for their protection.

In the case of Hunt v. McClanahan, 1 Heiskell (Tenn.), 503, it appeared that the attorneys had recovered or saved certain land for their client, and they filed an application to the court asking that a lien on the land be declared in their favor for fees, alleging that their client was insolvent or in embarrassed circumstances, and had moved to a distant State. It was there decided as follows: (1) "Attorneys, solicitors, and counsel have a lien upon property recovered or protected, for their services, which may be declared by order in the case in which the services are rendered." (2) "The client can not, while the suit is pending, so dispose of the subject-matter in suit as to deprive the attorney of his lien, nor afterwards to any purchaser with notice." (3) "The pendency of the suit is of itself notice to all persons, and the lien may be preserved and notice of it extended by stating its existence in the judgment or decree." In the case of Adams v. Fox, 40 Barb. 442, it appeared that the attorneys represented the defendant in a suit that had been referred to a referee, and recovered on their client's counter-claim against plaintiff a money judgment. It was held that "The attorney, by virtue of his lien on the judgment, may take the money in transitu, if he can lay hold of it. If he applies to

the court, it will prevent the money being paid over till his demand is satisfied. If the judgment debtor pays the judgment creditors after notice of the lien, the court may require him to pay it again, to the attorney. This is a power which the court exercises towards its officers and suitors already within its jurisdiction." In the case of Barnes *v.* Taylor, 30 N. J. Eq. 467, where it was held that the défendants were liable to complainants' solicitor for the amount of the lien for fees on account of paying over money recovered by the complainants in such case without paying fees of counsel, direction was given by the court that the matter be referred to a master to ascertain the amount due the attorney on his lien. In 21 Am. L. Rev. 86, it is declared: "The plaintiff's attorney may also be protected upon his application to the court for a rule restraining the judgment debtor from paying the money to the plaintiff until the attorney's lien is satisfied." Among the remedies recognized in that work as available to an attorney in such a case is the following: "When the amount of compensation is in dispute, the court may direct that a sufficient sum to cover the claim be brought into court to await an action at law or other procedure between the attorney and client to settle the amount." Without further comment, the application of the principles involved in the above citation of authorities to the present case will be readily seen. Among other allegations in the intervention it was declared that the bank, the plaintiff in error in this case, had ceased to do business, was in process of liquidation, and unless restrained by the court would pay out money realized for it by virtue of the auditor's report to its creditors and stockholders, and would thereby injure the petitioners and destroy their lien. These facts were not denied by the bank in its answer, except as to the injury that would result to the attorneys on account of this purpose of the bank. We think, therefore, it was manifestly the duty of the court to have entertained, under the pleadings, jurisdiction of this intervention filed by the attorneys, and, when the final decree was entered upon the auditor's report, to have given the matter such direction as would fully protect whatever lien the attorneys might have upon the assets in question, before the same were distributed under the decree.

The court, however, in the order it granted touching these fees, we think, went further than it was authorized to do under the pleadings in the case. The auditor filed his report on June 8, 1897. The intervention to preserve the lien of attorneys for fees was not filed until March 18, 1898. The decree was thereafter taken on May 5, 1898. The question of fees and a lien therefor was manifestly never submitted to the auditor, and no issue of law or fact with reference to this subject was passed upon by him. He simply stated in his report what counsel were present at the hearing before the auditor as attorneys for the defendants. Upon this recital in the auditor's report and upon the fact that the attorneys had filed an intervention in the case, praying that their fees be ascertained and allowed and their lien be preserved on the fund in the hands of the bank, the judge "ordered and decreed that liens are hereby set up and declared in favor of said attorneys for such sums as may be ascertained to be properly due to them, upon the funds arising from and by virtue of this decree, and that after paying the costs of this suit said attorneys' fees be paid prior to all other claims and demands in such manner as may hereafter be decreed in the intervention filed by them." Possibly the judge might have intended by the words of his order not to adjudicate any issue made by the intervention and the answer filed thereto, but simply to declare that if a lien should be established on the trial of the intervention as claimed therein, the amount of such lien should be paid prior to all other claims and demands after paying costs of suit. The order passed, however, is clearly susceptible of the construction that both firms of attorneys actually had liens upon the fund for whatever fees might be found to be due them for services rendered. Under this construction, the only issue left for determination on the intervention and answer thereto would have been the amount reasonably due the attorneys for such services. The answer, however, presents a further issue, namely, that one of the firms, Fouche & Fouche, was never employed by the bank to represent it in the cause, and it never contracted or agreed to pay this firm for services rendered in the cause; that the other firm was employed by the bank to represent its interests in said cause, and

that it had been fully paid for all services which had been rendered. The question as to whether or not there was any lien existing in favor of Fouche & Fouche against the bank would depend upon the facts of the case showing what particular relation these attorneys sustained to the cause, and whether or not, by virtue either of their contract or the character of the services rendered with the knowledge of the bank, they were entitled to a lien on the fund for the value of the services rendered before the auditor. We think the proper course for the court to have pursued in this case was to have impounded a sufficiency of the fund and assets in question to meet such demands for attorneys' fees as might be established on the final trial of the issues made by the intervention and the answer thereto, and to this end it should have required the payment into court of such an amount found in favor of the bank by the decree as would equal the sum claimed by the intervenors; and direction is accordingly given that the eleventh paragraph of the decree complained of be vacated and set aside, and that in lieu thereof the judge below grant an order as above indicated.

*Judgment reversed, with direction. All the Justices concurring.*