Ballin & Company *vs.* Ferst & Company *et al.*

EUGENE S. BALLIN & COMPANY, plaintiffs in error, *vs.* M. FERST & COMPANY *et al.*, defendants in error.

SCHUSTER, SON & COMPANY, plaintiffs in error, *vs.* M. FERST & COMPANY *et al.*, defendants in error.

JOSEPH SELIGMAN *et al.*, trustees, plaintiffs in error, *vs.* M. FERST & COMPANY *et al.*, defendants in error.

EUGENE S. BALLIN & COMPANY, plaintiffs in error, *vs.* WILLIAM J. CLEMENTS, clerk, defendant in error.

1. Exceptions certified and entered of record, *pendente lite*, will not be adjudicated by the supreme court so long as the cause is pending below.

2. As a general rule, a motion by defendants to dismiss the bill can be made only at the hearing, and must be predicated upon matters appearing on the bill itself. A motion prior to the hearing might be entertained for some default of the complainant in prosecuting his case, or for non-compliance with the rules of practice or legal orders of the court.

3. Bankruptcy of some or all of the defendants is no cause for dismissing a bill prior to the hearing, unless the complainant admits the bankruptcy and concedes that it bars all the relief prayed for. Suspending proceedings, in terms of the bankrupt act, is a different thing from dismissing the bill.

4. When one of the defendants demurs separately for the want of equity, the bill will not be dismissed as to the other defendants, though there may be no equity as to them. Sustaining the demurrer dismisses the bill as to him only.

5. Where debtors are beyond the jurisdiction, their creditors numerous, their assets here in the shape of money and credits, many of those indebted to them unknown, and, therefore, not to be reached by garnishment, and where they have an agent here cognizant of all their resources within the jurisdiction, and where conflicting claims among different creditors touching equitable priority, are to be settled, the remedy for creditors by bill injunction and the appointment of a receiver, is more ample and complete, certainly more safe, than the remedy at law by attachment.

6. Although, as a general rule, a mere agent cannot be made a party for the purpose of obtaining a discovery, yet where material facts are peculiarly within his knowledge touching books and papers, and his principals are beyond the jurisdiction so that no discovery by them can be compelled, he may be made a party for such purpose, in analogy to the common case of agents and officers of corporations: 2 Story's Eq., sections 1500, 1501.

7. Where three persons constitute two separate partnerships engaged in business, similar or dissimilar, in different states, each partnership having a distinct firm name, an adjudication of bankruptcy in either jurisdiction, on

Ballin & Company *vs.* Ferst & Company *et al.*

petition of creditors of one firm only, will apply to all the debts and assets of both partnerships.

8. The bankrupt act of 1867, as contained in the revised statutes of 1874, and amended by a separate act of congress, passed on June 22d, the same day the revision was adopted, is still of force; and a judgment of adjudication which recites the act of 1867 as authority for the proceeding, had in October, 1874, is not even irregular, much less void.

9. Trustees in bankruptcy, duly appointed after lawful adjudication, are entitled to all assets of the bankrupt seized on *mesne* process issued from a state court, (not based on a specific lien created by contract,) provided the seizure was made within four months prior to the adjudication, and provided an injunction has been granted in bankruptcy restraining the plaintiff in the state court from proceeding further therein. And the state court, on petition from the trustees, supported by proper record evidence, should order its receiver or other officer to surrender such assets for due administration in the court of bankruptcy.

10. The clerk has no right to his costs out of the fund in a receiver's hands, until the fund has been adjudged subject to costs, on the termination of the case: Code, section 3684.

Practice in the Supreme Court. Equity. Practice in the Superior Court. Bankrupt. Injunction. Receiver. Debtor and creditor. Principal and agent. Discovery. Partnership. Costs. Before Judge TOMPKINS. Chatham Superior Court. February Term, 1875.

On October 12th, 1874, M. Ferst & Company, and other creditors of H. Mayer & Company, a firm engaged in banking in the city of Savannah, filed their bill alleging, in substance, as follows:

The partners composing H. Mayer & Company are non-residents of the state of Georgia. Said firm conducted a banking business in the city of Savannah through their agent, George Von Seybold, who is in possession of evidences of indebtedness to the amount of $60,000 00. This partnership was in intimate association with a firm engaged in the business of commission merchants in the city and state of New York, under the name of S. Kaufman & Company. In fact, the members of the latter firm constituted also the former. On October 1st, 1874, Kaufman & Company failed. This necessitated a suspension on the part of Mayer & Company. At this time the assets

of Mayer & Company, accumulated in their business in Savannah, were sufficient to meet all their obligations, if not subjected to the indebtedness of Kaufman & Company, to which complainants submit they are not liable.

Seligman & Company and Schuster, Son & Company, both of the city and state of New York, and creditors of Kaufman & Company, have sued out attachments and garnishment proceedings, which latter have been served upon Von Seybold. Complainants claim that they, and the other creditors of Mayer & Company, are, in equity, entitled to priority in the distribution of the assets of said firm over the creditors of Kaufman & Company. These assets are in the custody of Von Seybold, and being of a personal nature, are liable to be removed therefrom and carried beyond the jurisdiction of the court by Mayer & Company. A large portion of them consists of negotiable securities not yet due, which, if transferred to innocent holders, would prevent complainants from making them subject to their judgments when obtained. Certain other creditors of Mayer & Company (named) have levied attachments and served garnishments at various times heretofore, acquiring different degrees of priority, and involving in their determination and adjustment in a court of law interminable litigation and enormous costs, but which, in a court of equity, can be settled in one proceeding. The other creditors of Mayer & Company, at present unknown to complainants, they pray, when discovered, may be made parties complainant or defendant, as they may determine to unite with complainants or to oppose them.

The assets of Mayer & Company which have been attached and garnished, consist, to a large extent, of promissory notes and drafts maturing, in many cases secured by collaterals. These latter consist of cotton, cotton liens, produce stored, and other articles of a perishable nature which require the immediate care and attention of some competent person unrestrained by the process of a common law court.

Complainants have demanded of Von Seybold the payment of their demands, (naming their origin and amounts,)

Ballin & Company *vs.* Ferst & Company *et al.*

out of the assets of Mayer & Company, in his hands, but he claims to be prevented by the various processes already served upon him.

They pray as follows:

1st. Discovery from Von Seybold as to assets and liabilities of Mayer & Company. 2d. That he be authorized to expend a sufficient sum of money to insure the safety of the assets in his hands. 3d. That he be enjoined from disposing of them, from turning them over to Mayer & Company, or in any way removing them from the jurisdiction of this court. 4th. That he be required to execute, and to file in the office of the clerk of the superior court, a bond with security, conditioned to abide the decree of this court, and to account for the assets in his hands. 5th. That Seligman & Company, and Schuster, Son & Company, by their attorneys at law, and the creditors of Mayer & Company, named, and all other persons and their attorneys, may be restrained from further proceedings at law by attachment or otherwise against the assets of Mayer & Company, and that this injunction may operate against the other creditors as they become known. 6th. That some proper person may be appointed to receive and collect such assets. 7th. That they may have such further relief as may seem proper. 8th. That the writ of subpœna may issue to the parties named.

No prayer for subpœna to be directed either to Mayer & Company, or to Kaufman & Company, or to the partners composing said firms was attached.

On November 13th, 1874, after due notice, the writ of injunction was ordered to issue, and George Von Seybold was appointed receiver.

On January 16th, 1875, leave was granted to amend the bill by making all of the creditors of Mayer & Company, whose names had been discovered, parties defendant, with authority to them to come in as parties complainant should they prefer. The amendment was filed making them parties defendant on the 28th of the same month.

On February 18th, 1875, Ballin & Company, who alleged

themselves to be creditors of Samuel Kaufman, Henry Mayer and Charles H. Kaufman, doing business in the city of New York, under the name of S. Kaufman & Company, and in the cities of Liverpool, England, and Savannah, Georgia, under the name of H. Mayer & Company, were, on their own motion and over the objection of complainants, made parties defendant.

To this ruling complainants entered an exception *pendente lite.*

Ballin & Company, having been made parties, demurred to so much of the bill as sought to give complainants a priority over the creditors of Kaufman & Company, in the distribution of the assets of Mayer & Company, in the hands of Von Seybold. To the remainder they answered, in brief, as follows: Deny that the assets in the hands of Von Seybold, at the time of the filing of the bill, were derived wholly from deposits and proceeds of bills of exchange sold. Admit attachments but deny the necessity for a receiver. Allege that the Kaufmans and Mayer were adjudicated bankrupts in the district court of the United States for the southern district of New York, on October 31st, 1874, under the provisions of the bankrupt act of March 2d, 1867. To this answer was attached a certified copy of the adjudication of bankruptcy.

With this demurrer and answer for a foundation, they moved to dissolve the injunction, to vacate the receivership and to dismiss the bill.

In reply to this motion complainants moved to dismiss the bill as to them. This the court refused, and complainants excepted.

The court refused either to dissolve the injunction, or to vacate the receivership, or to dismiss the bill. To each of these rulings Ballin & Company excepted.

On March 25th, 1875, complainants amended their bill by praying that Henry Mayer, Samuel Kaufman, and Charles H. Kaufman, copartners under the name of H. Mayer & Company, might be decreed to pay to them the amounts due, and also that the writ of subpœna might issue to said defendants.

Schuster, Son & Company, on March 27th, 1875, filed a general demurrer to the bill for want of equity, and also moved to dismiss the same because of the bankruptcy of the partners composing the firms of Kaufman & Company and Mayer & Company. The court overruled the demurrer and refused to dismiss the bill. To each of these rulings Schuster, Son & Company excepted.

On April 5th, 1875, Joseph Seligman and others filed their petition, in which they alleged that Samuel Kaufman, Henry Mayer and Charles H. Kaufman, as partners doing business in the city of New York under the name of S. Kaufman & Company, and in the cities of Liverpool, England, and Savannah, Georgia, under the firm name of H. Mayer & Company, had, on October 31st, 1874, been adjudged to be bankrupts in the district court of the United States for the southern district of New York; that they had been regularly appointed trustees under the provisions of the 43d section of the bankrupt act of March 2d, 1867; that they had filed a bill in the district court of the United States for the southern district of Georgia, to enjoin the complainants from further proceeding with their bill in the superior court of Chatham county; that the injunction had been granted and served; whereupon they prayed that the assets in the hands of the receiver appointed under the bill in Chatham superior court might be turned over to them.

To this petition were attached proper exemplifications of the proceedings therein referred to, from which it appeared that the adjudication in bankruptcy had been made under the act of March 2d, 1867.

The court rejected the petition, upon the ground that the act of March 2d, 1867, had been repealed by the adoption of the revised statutes of the United States, on June 22d, 1874. To this ruling Seligman *et al.* excepted.

On May 24th, 1875, William J. Clements, late clerk of the superior court of Chatham county, filed his petition, asking for an order requiring the receiver to pay to him $72 75 costs which had theretofore accrued to him in this litigation.

To this petition was attached an itemized account. The proceedings in which the costs had accrued were still pending, no final decree having been had.

The court ordered as prayed, whereupon Ballin & Company excepted.

Bills of exception were filed to the several rulings of the court hereinbefore set forth by the various parties defendant and by the trustees in bankruptcy. This brought up the entire record, and with it the exceptions of complainants, which they asked might then be considered.

CHARLES N. WEST; A. T. AKERMAN, for plaintiffs in error.

J. R. SAUSSY; JACKSON, LAWTON & BASINGER; W. GRAYSON MANN; HOWELL & DENMARK; GEORGE A. MERCER, for defendants.

HARTRIDGE & CHISHOLM; WILLIAM U. GARRARD, for the receiver.

BLECKLEY, Judge.

1. The trunk from which these four writs of error are offshoots or branches, is the bill in equity (still pending in the court below) filed by M. Ferst & Company *et al. vs.* Von Seybold *et al.* Exceptions were, in terms of the Code, entered *pendente lite*, at the complainants' instance, to two rulings of the court, one admitting Ballin & Company, with two other firms, to become parties defendant, on their own motion, and the other refusing to dismiss the bill, as to these same defendants, on motion of the complainants. That these rulings might have been brought here by the complainants for review, if they had thought proper to make them the subject of a writ of error, is not improbable: 53 *Georgia Reports*, 443. But, not choosing to avail themselves of that remedy, they simply entered their exceptions *pendente lite*. The time for considering exceptions thus entered is not until the case has been finally terminated in the court below, and a

writ of error has, thereafter, been brought by one of the parties. Then error may be assigned upon such exceptions. There is no provision of law for an earlier adjudication: Code, section 4250.

2. The motion by Ballin & Company to dismiss the bill had other objects besides. In so far as it sought to dismiss the bill, some of its grounds were out of place, others out of season, and none of them, we think, sufficient. The ground that jurisdiction was not in Chatham superior court was not good whether aimed at the venue or at the tribunal. The ground of no equity in the bill, if intended to suggest a common law remedy, was matter for demurrer: 27 *Georgia Reports*, 353; or, if intended to deny equity, in a more strict and proper sense, was matter either for demurrer or for a motion to dismiss at the hearing: *Ibid.* In 32 *Georgia Reports*, 669, a motion, for want of equity in the former sense, was entertained, but no point seems to have been made that a demurrer was necessary. If the point had been made, 27 *Georgia Reports, supra,* would have ruled it in the affirmative. The ground that all the equity was sworn off by the answer, was out of place, for the answer, on a motion to dismiss the bill, cannot be considered: *Webster vs. Thompson,* 55 *Georgia Reports,* 431. The same may be said of the ground that, pending the bill, the persons composing the two firms of M. Ferst & Company, and S. Kaufman & Company, had been adjudicated bankrupts. This ground is further dealt with under the next head. The motion referred, in a general way, to the grounds contained in a demurrer filed by the movants, and made those grounds one of the grounds of the motion itself. But the demurrer did not go to the whole matter of the bill; neither is the overruling of the demurrer one of the decisions of the court complained of; and that is the decision that disposed of the legal questions which the grounds of demurrer embraced. The defendants to the bill were numerous, and the motion to dismiss made by Ballin & Company, was unrestricted in respect to parties. If the movants had wanted the bill dismissed as to themselves only

the complainants were ready to accommodate them. Ballin & Company, with others, became parties voluntarily, in spite of the complainants; and the latter sought to let them go, but they would not depart. If one defendant can have the bill dismissed as to all, upon his separate motion, it surely cannot be done, as a general rule, except at the hearing. When the whole case is up, and all the parties on trial, perhaps the motion of one may sweep it away. We think, too, that where all the defendants join in a motion to dismiss, or where one moves that the bill be dismissed as to him only, the proper time for the motion is, usually, at the hearing and not before. Whatever comes up before, by way of direct defense to the main case, should be presented by the appropriate instrument of pleading, such as demurrer or plea. For an early hearing of these, provision is made by the Code, section 4191; but there is no provision for bringing on motions to dismiss, as distinct from a final trial of the cause. It is said in 27 *Georgia Reports*, *supra*, that a motion to dismiss for certain matters may be made at any time; but that means doubtless, that up to final decree, it is never too late; not that such a motion is always in order whenever the defendant may think proper to make it. For default in prosecuting the case, or for non-compliance with rules of practice, or with legal orders of the court, motions to dismiss can, of course, be entertained whenever sound discipline and the due administration of justice may require.

3. Another defendant firm, that of Schuster, Son & Company, moved to dismiss the whole bill, the single ground of their motion being the adjudication of bankruptcy referred to above. Bankruptcy is a fact, and when set up as a defense by one or all of the defendants, should be pleaded in some regular way. Unless admitted as a fact by the opposite party, with a concession of its effect as barring all the relief prayed for in the particular case, it is not, of itself, cause for dismissing the bill in advance of the hearing. The temporary suspension of proceedings provided for by the bankrupt act is another matter.

4. In connection with their motion, Schuster, Son & Company demurred, generally, to the bill, for want of equity. This was a defense in which they were joined by none of their co-defendants; and had the demurrer been sustained their real object, perhaps, would not have been accomplished; for they did not want the bill dismissed as to themselves alone, and a separate judgment on their demurrer could have gone only to that extent. The main case was not on trial, so as to enable the court to make a final decree disposing of the whole, nor was it ripe for trial.

5. But, passing to the merits of the demurrer, we think there is some equity in the bill; how much need not be further indicated now than appears in the fifth head-note. The bill is wanting, it is true, in a direct and distinct averment of ignorance on the part of complainants as to who are all the persons indebted to H. Mayer & Company; but from what is averred as to the amount, character and custody of the assets, we think it reasonable to conclude that the complainants need the discovery from Von Seybold for which they pray, and that there are probably debtors whom they cannot, for want of full information, reach by garnishment. Even if all could thus be reached, there are still multiplicities, conflicts and complications which adapt the case to equity jurisdiction; and the occasion for early acts of diligence in preserving some of the assets unimpaired would seem to render the superintendence of that jurisdiction essential, and its extraordinary remedies appropriate. We should abstain, therefore, from disturbing the refusal of the court to dissolve the injunction and vacate the receivership, on the motion of Ballin & Company, even if there were no doubt of our power to review interlocutory rulings of that class.

6. Upon the point urged in the argument, that the equity of the bill was not aided by Von Seybold's relation to it, for the reason that he, being only an agent, was not a proper party, the views of the court are sufficiently set out in the sixth head-note. His principals were non-residents, and he had charge of their paper, collaterals and other resources, arising

out of the banking business which he had conducted in their behalf. These were the assets sought to be reached and secured by the bill. From the nature of the business his knowledge was peculiar, if not, as to some matters, exclusive; and the discovery needed by creditors could not be coerced from his absent principals, if, indeed, they possessed all the knowledge that he did. We do not mean to say that the agent, as a party defendant, would be a full substitute for the principals. These, though not within the jurisdiction, should, doubtless, have been made parties also, and served by publication or otherwise. The omission to make them parties at first in due form was afterwards supplied by amendment.

7, 8, 9, 10. The other points ruled by the court may be left to stand on the statement of them in the head-notes.

Judgment affirmed on the first two writs of error, and reversed on the other two.

