SAPP *et.al. v.* WILLIAMSON *et al.*

1. What purports to be a consent decree having been entered in vacation, and there being no order in term authorizing the decree to be so entered, and the same not having been entered at a time and place fixed under the provisions of the Civil Code, § 4323 et seq., it is inoperative as a judgment of the court, for the reason that the judge was without authority to enter the same.

2. If a paper purporting to be a consent decree, in a case irf which the administrator of a deceased person is a party, is inoperative as a judgment, for the reason that the court was without jurisdiction to render the decree, but operative as an agreement to which the administrator has assented, the heirs of the .estate will not be concluded by the paper, as an agreement, from calling the administrator to an accounting for any matter therein which charged the estate with claims with which it was not chargeable, or which provided for a distribution of the assets of the estate in any other manner than that authorized by law.

3. Whatever may be the rights of the plaintiffs in another proceeding, with proper allegations and proper parties, there was no equity in the present petition, and the court did not err in dismissing the same.

4. When there are several defendants to an equitable petition, and some of them file demurrers and others do not, the petition should not be dismissed as to the defendants who did not demur, even though there is no equity in the petition as to any of the defendants.

Submitted May 25,—Decided July 13, 1907.

Equitable petition. Before John P. Ross, judge pro hac vice. Dodge superior court. May 31, 1906.

Charles W. Sapp, George W. Sapp, Jeff. D. Sapp, William S. Sapp, Katie Ward, Lou Powell, and Annie Cobb brought their petition against the Merchants and Farmers Bank, J. C. Rawlins, administrator of Susan A. Sapp, W. B. Sapp, A. G. Williamson, J. C. Rogers, sheriff, T. B. Ragan, and Mollie H. Grace, alleging that the plaintiffs are the children of W. B. Sapp and his wife, Susan A. Sapp, and are the heirs at law of the latter, who died intestate in 1902; that at the September term, 1895, of the superior court of Dodge County, Ragan, as surviving partner of the firm of Ragan & Company, began proceedings to foreclose a mortgage on a described lot of land against W. B. Sapp, and obtained a judgment of foreclosure in 1898. The plaintiff was represented by J. H. Martin, Esquire, and the defendant by Smith & Clements, as attorneys. On May 28, 1898, an execution, issued on the foreclosure judgment, was levied, and a claim was interposed by Susan A. Sapp, which seems never to have been disposed of. In this

case the plaintiff was represented by J. H. Martin, Esquire, and the claimant by E. Herrman, Esquire. In 1899 Ragan, as surviving partner, filed suit in the county court against W. B. Sapp as principal, and D. W. Sapp as security. This case was appealed by consent to the superior court, dismissed for the want of prosecution, reinstated on the same day, and seems to have been never thereafter disposed of. J. H. Martin, Esquire, represented the plaintiff, and E. B. Milner, Esquire, the defendant. In 1904 Mollie H. Grace brought a petition in equity against W. B. Sapp and J. C. Rawlins, administrator, to cancel a deed from W. B. Sapp to Susan A. Sapp, bearing date September 30, 1889, to certain described lots of land; among them being the lot embraced in the mortgage above referred to; all of such lots adjoining each other, and being embraced in one tract. The deed purported to be upon a consideration of one thousand dollars. The petition also sought to enjoin Rawlins, the administrator, from selling the land described in the deed under an order granted by the court of ordinary, and also sought to foreclose a mortgage on one of the lots given by W. B. Sapp to Mollie H. Grace. Certain of the heirs at law of Susan A. Sapp were made parties defendant to this proceeding. J. H. Martin, Esquire, represented the plaintiff, and W. M. Morrison, Esquire, and Messrs. Hall & Wimberly represented the defendant. At the same time, and in the same court, Ragan, surviving partner, brought a petition in equity against the same parties for the same purposes as indicated in the petition of Mollie H. Grace; Ragan setting up the same mortgage which he had previously foreclosed. In this case the attorneys were the same as in the case of Mollie H. Grace. In 1904 the Merchants and Farmers Bank obtained a judgment of foreclosure on one of the lots described in the deed above referred to, against Susan A. Sapp, and the mortgage execution was levied. In this case the plaintiffs were represented by J. P. Highsmith, Esquire, and the defendant was in default. In 1905, Ragan, as surviving partner, brought a petition in equity against the Merchants and Farmers Bank, Rogers, sheriff, and Rawlins, administrator, for the purpose of enjoining the sale under the mortgage execution of the Merchants and Farmers Bank, so far as it related to one of the lots therein. In this case the plaintiff was represented by Messrs. W. L. & Warren Grice, the bank by Messrs. D. M. Roberts & Son

and J. P. Highsmith, Esquire. The sheriff and administrator do. not seem to have been represented by counsel, or to have made any defense. There was no process annexed to the petition, nor does it appear to have been filed, but the same was answered by the bank. In 1905 Mollie H. Grace brought a petition in equity against the bank, Rogers, sheriff, and Rawlins, administrator, for the purpose of enjoining the sale of another lot embraced in the mortgage of the bank. In this case no process was annexed to the petition, nor does the same appear to have been filed; but an answer was filed by the bank. The plaintiff was represented by Messrs. W. L. & Warren Grice, the bank by Messrs. D. M. Roberts & Son and J. P. Highsmith, Esquire, and the sheriff and administrator by J. E. Wooten and W. M. Morrison, Esquires. George W. Sapp interposed a claim to a part of the land embraced in the mortgage execution of the bank, and Charles W. Sapp also interposed a claim to a portion of the land embraced in the mortgage. While the litigation was in the stage above referred to, what purports to be a consent decree was entered. This decree bears no date, but purports to be signed nunc pro tunc as of May 16, 1905, though as a matter of fact it was not signed at that time, nor at the May term, 1905, nor at any term, nor in open court at a place where the court was held, but was actually signed in another county after the adjournment of court, in vacation, at chambers. The decree, after stating some if not all of the cases above referred to, recites that the disqualification of the presiding judge, Honorable J. H. Martin, is waived by all parties, and by consent the cases are heard and determined at the May term, 1905, by the presiding judge, without the intervention of a jury. It is then decreed that the cases be consolidated; that the claims filed by Susan A. Sapp, Charles W. Sapp, and George W. Sapp be withdrawn; that certain described lands be sold under the foreclosure judgment of the bank and Ragan "under the Grace paper," after due advertisement. It provides the manner in which the sale shall be conducted by lots and the disposition to be made of the proceeds, the Ragan mortgage to be first paid in full, and Ragan be paid $36.75 actual expenses incurred in the injunction matter and other matters relating thereto; that the mortgage of Mollie H. Grace be next paid in full, then the mortgage of the bank be next paid, then another debt to Ragan; and that Judge Roberts, attorney for the

bank, be reimbursed for certain actual expenses in defending the injunction proceeding, and that the costs of court be next paid. After the payment of the sums above referred to, any balance remaining is to be turned over to the administrator of Susan A. Sapp for the purposes of administration. The decree then recites, "It is further understood by all the parties hereto that, as this consent decree was agreed to on May 16, 1905, the same being a day during the regular May term, but for providential cause was not presented to the judge for his signature at the time contemplated, that this decree be now signed nunc pro tunc as of May 16, 1905, all parties consenting hereto." It then provided that the mortgage lien of Mollie H. Grace be displaced and its lien attach to the proceeds in the same manner as if the mortgage had been duly foreclosed; and that the several petitions above referred to be dismissed; and that the decree supersede all former orders in the different cases. The decree was signed by Messrs. W. L. & Warren Grice as attorneys for Ragan, G. W. Sapp, Charles W. Sapp, and Mollie H. Grace, by W. M. Morrison, Esquire, as attorney for Rawlins, administrator, and by Messrs. D. M. Roberts & Son and J. P. Highsmith as attorneys for the bank, and by W. B. Sapp. Upon this decree Judge Martin entered the following: "So ordered and decreed. Let this be entered on the minutes of Dodge superior court." There appears on the decree an entry by the clerk that the same was entered on the minutes of the court on specified pages, May term, 1905.

It is alleged, in the petition, that G. W. Sapp and C. W. Sapp never consented to the terms of the decree, and never authorized the attorneys purporting to sign the decree in their behalf either to sign the same or to withdraw their claims; that they are in actual possession of the land claimed and have been in possession more than seven years under a parol gift of their father and mother, and by reason of the gift have made valuable improvements, and therefore claim the ownership of the land. Having learned that their claims had been withdrawn, they prepared a second claim to the property and tendered it to the sheriff when he proceeded to sell the same under the pretended decree; but the sheriff refused to accept the claim, upon the ground that the creditors and administrator of Susan A. Sapp objected thereto. They prepared a petition setting forth the facts herein set forth, for the purpose

of enjoining the sale, but it was impossible for them to reach a qualified judge before the time for the sale; and therefore they simply filed their petition and gave notice of their claim at the sale. The petition and claim were disregarded by the sheriff, and the lands were sold to Williamson, to whom the sheriff executed a deed. It is alleged that the sale was illegal, for the reason that the levy and advertisement did not state the name of any one as the owner of the land levied on. All of the petitioners aver that while the decree purports to have been granted by consent, as a matter of fact none of them ever consented thereto, nor authorized any attorney or any other person to consent to any such decree, nor did they waive the disqualification of the presiding judge, nor did they agree for the decree to be entered during vacation without the intervention of a jury; never having been consulted in reference to any of these matters. The plaintiffs Jeff. D. Sapp, William S. Sapp, Katie Ward, Lou Powell, and Annie Cobb show that so far as they are concerned, although they were parties to the litigation in which the decree was rendered, the decree does not even purport to have been consented to by them, or by any person in their behalf, and in fact was never consented to by them, or by any authorized person for them. It is alleged that the mortgage in favor of Mollie H. Grace has never been foreclosed, and the sheriff had no authority to sell the land therein mortgaged; that it was illegal to sell under the Ragan mortgage any other property than that embraced in the mortgage execution. The manner in which the proceeds of the sale were directed to be paid is attacked as being illegal and unauthorized. The payment of the expenses of Ragan is also attacked as being illegal and beyond the jurisdiction of the court. The payments that were ordered to be made to different parties are alleged to be illegal for various reasons. It is alleged that Rawlins, as administrator of Susan A. Sapp, had no authority to consent for funds arising from the sale of the property of the estate to be applied to the debts of W. B. Sapp and other claims to which it was appropriated by the decree, and the administrator had no authority to bind these plaintiffs in regard to the matters embraced in the litigation. The amount of the indebtedness is set forth, as well as the value of the property. It is distinctly alleged that there has never been any necessity for the decree or for the sale of the land, for the reason that the plaintiffs, as heirs

of Susan A. Sapp, have been at all times ready and willing to pay the just debts of her estate and divide the remainder among themselves, and they are still ready to do this, and they are also ready and willing to pay all the just debts of W. B. Sapp secured by liens to which the land may be legally subject. It is also alleged that the decree is illegal, because granted in vacation, at chambers, out of the county in which the litigation was pending, and by a disqualified judge. Plaintiffs have received no part of the proceeds of the sale, and the sheriff has not put Williamson, the purchaser, in possession; but Williamson has been cutting and hauling the timber from two of the lots, and is threatening to take possession of the land. The prayer is, that the sheriff be enjoined from placing Williamson in possession, and that he be enjoined from taking possession; that all of the defendants be enjoined from interfering with or disposing of the land sold by the sheriff; and that the decree be declared null and void and be set aside; and for general relief and process. By amendment it is alleged that the decree was void for the further reason that there was no order granted or taken in term time providing for a hearing and disposition of the case in vacation, and there is no written consent of the parties in the premises. Williamson, Mollie H. Grace, and Ragan filed a demurrer, in which they alleged that there was no equity in the petition; that it appears therefrom that the plaintiffs sue as heirs at law of Susan A. Sapp, and that her estate is represented by an administrator, and it is not alleged that the administrator has been discharged or that he has consented to the bringing of the suit, and there is no allegation of fraud or collusion between the administrator and the other defendants; that it does not appear that the plaintiffs are all of the heirs of Susan A. Sapp, nor what is the interest of each of them; that the allegations in reference to the irreparable damages are too general and vague; that the wrongs complained of are merely trespasses, and there is no allegation of insolvency; that, so far as the plaintiffs Charles W. Sapp and George W. Sapp are concerned, there is no allegation that the attorneys who signed the decree in their behalf did not represent them in the claim cases; and that the order of the ordinary authorizing the sale of the land can not be collaterally attacked. The demurrer was sustained, and the plaintiffs excepted.

*DeLacy & Bishop,* for plaintiffs. · *W. L. & Warren Grice, D. M. Roberts & Son,* and *W. M. Morrison,* for defendants.

COBB, P. J. (After stating the facts.)

1. While the record in this case contains only the petition and the demurrer, it fairly bristles with· allegations of fact and averments of dates; and this is calculated to beget confusion. But, after a careful consideration of the petition, we think that the case· at last can be resolved by the application of a few well-settled principles. The judges of the superior court can not exercise any power out of term time, unless the authority to do so is expressly granted by law, or an order has been taken in term conferring authority to render a judgment in vacation. Civil Code, §4325. The law expressly authorizes such judges to hear and determine, in vacation, without an order passed in term, motions for new trials, certioraries, and such other matters as are not referred to a jury, provided application is made by either party, or his counsel, and ten days notice in writing is given to the opposite party of the time and place of hearing. Civil Code, §§4323, 4324. What purports to be a consent decree in the present case· was not, according to the allegations in the petition, entered in term time. It does not appear that an order was taken in term authorizing the decree to be entered in vacation. The allegation of the petition is that there was no such order. The matters involved were such as, under the law, would be referred to a jury, unless, by consent, the judge was authorized to pass upon the questions of fact involved. Even if a case of this character could be heard in vacation, under the sections above referred to, providing for ten days notice, there was nothing to indicate that a hearing was had under this provision of the law. On the contrary it appears, from the very paper itself, that the decree was not so signed, it being stated therein that the terms of the decree were agreed upon in term and the decree entered nunc pro tunc. While an order, judgment, or decree may be entered nunc pro tunc under certain conditions, this must be done in term time, except in those cases where the judge is authorized to act in vacation. Of course it is within the power of parties to waive the disqualification of the judge; and when such waiver is made, he has, in the particular case, all the authority that he would have if no such disqualification existed; but mere waiver of the disqualification does not confer upon him any greater

power than he already had under the law. Even if the presiding judge had not been disqualified in the present case, we think the decree would be inoperative for the reasons above referred to.

2. As the decree was inoperative as a judgment of the court, the question arises, how far is the paper binding upon the parties who have consented thereto? While what purports to be a consent decree may fail to operate as a judgment binding upon the parties, on account of the want of jurisdiction in the court, or other valid reason, still, if the terms of the same were entered into upon a sufficient consideration, agreed to by the parties with a full knowledge of its contents, it would, in the absence of fraud, accident, or mistake, be operative as an agreement binding upon all of the parties thereto. *Kidd* v. *Huff,* 105 *Ga.* 208 (1) ; *Driver* v. *Wood,* 114 *Ga.* 296. What purports to be the consent decree is signed by counsel in behalf of at least some of the plaintiffs. It is distinctly alleged that none of the plaintiffs ever consented to the decree, but it is not denied that the counsel who signed the decree were the counsel of record of those parties whom they purported to represent. The signature of the counsel would therefore be prima facie evidence that the parties had consented thereto. The control of counsel over a case in their hands is, under the law, very broad, and, except in those cases where the law distinctly declares that counsel can not bind their clients by agreement entered into in reference to a case in which they are employed, the consent of counsel will bind the client so far as the opposite party is concerned; the counsel, of course, being responsible to his client for any loss resulting from the fact that he has disobeyed instructions, or the rights of his client have been prejudiced by his negligence. But, for the purposes of this case, we will deal with what purports to be a consent decree as inoperative upon the plaintiffs, both as a judgment and as an agreement; for in our opinion, even when it is so dealt with, there is no equity in the petition. All of the plaintiffs sue as the heirs at law of Susan A. Sapp in reference to some of the matters involved. Two of the plaintiffs set up title in themselves; each to a portion of the lands in controversy. We will first deal with the petition so far as it relates to the alleged claims of the heirs at law of Susan A. Sapp. It must be kept in mind that the estate of Susan A. Sapp is represented by an administrator. The bank had a mortgage

execution upon a portion of the lands involved in the controversy; such mortgage having been given by Susan A. Sapp. A sale under this mortgage execution had been enjoined at the instance of Ragan in one proceeding, and Mrs. Grace in another. With these injunctions removed there was no legal obstacle in the way of the bank proceeding to sell the land embraced in its mortgage execution. The parties who had obtained these injunctions consented to the sale, and the plaintiffs had no concern in this matter. Ragan and Mrs. Grace could have dismissed their bills and the injunction been thereby dissolved. They could have allowed their bills to remain pending, and it was no concern of the plaintiffs in this case that they had consented to the injunction being, in effect, dissolved. Even if the bank had caused a sale to be had in violation of the injunctions, it would have been no concern of the plaintiffs, but the officers of the bank and its counsel would have rendered themselves amenable to the court for contempt, and, at the instance of Ragan and Mrs. Grace, proceedings might be had to punish them for contempt or to restore the status. But the plaintiffs had no concern whatever in reference to this matter. If the mortgage-foreclosure judgment was a valid judgment against the administrator, title to the land would have passed at the sale. If it was not a valid judgment, no title would have passed. But it is said that under the terms of the consent decree the proceeds of the sale were to be divided in such way as to prejudice the heirs of Susan A. Sapp, that claims were to be paid which were not charges against her estate at all, and that it provided for the payment of the debts of W. B. Sapp out of the proceeds. It is also, in effect, charged that the lands not embraced in the mortgage were to be sold under the mortgage execution. There is no allegation that the administrator of Susan A. Sapp is insolvent, nor is it alleged that the securities on his bond are insolvent. If the sale under the mortgage execution of the bank was conducted in good faith and without collusion between the administrator and the bank, the sale was valid. And even if there was collusion between the administrator and the bank, and Williamson was not a party to the collusive arrangement, but bought in good faith as the highest bidder at the sale, the sale would be valid. But if the administrator had been faithless to his trust in any way, he must respond to the heirs of the estate for

the amount which they have been damaged. If the administrator has agreed to pay claims out of the assets of the estate which he had no authority to pay, upon an accounting he will be held liable to the heirs for such amounts. The decree does not stand in the way of the heirs as a judgment, and if, as a contract, it is binding upon the administrator, the heirs may still go behind it and show that he has entered into an agreement which was unauthorized by law, and therefore he must make good to the heirs the loss they have sustained thereby. As to all of the matters alleged as claims of the plaintiffs as heirs at law of Susan A. Sapp, they have an adequate remedy at law by suit against the administrator and the securities on his bond, and it is not necessary that the paper purporting to be a consent decree should be cancelled.

3. The petition also sets up a claim of title on behalf of George W. Sapp and Charles W. Sapp, each to a different part of the lands in controversy. The decree purported to withdraw the claims which these parties had filed. There is no denial of the fact that the counsel signing the decree in their behalf represented them, and it was within the authority of counsel to withdraw their claims if they saw proper; being liable to their clients in the event that this was contrary to instructions, or negligence on their part. There is nothing in the decree which purports in terms to condemn the land of these two Sapps to any of the executions. It only purports to withdraw the claims; and so far as they constituted an obstacle to the sale, such obstacle was thus removed. There is nothing in the decree which makes the land subject to the executions, if they were not already subject, and there is nothing which prevents the claimants from thereafter asserting title to the same. They claim title under a parol gift from their father and mother; such gift being followed by valuable improvements. If, at the time that their father was the owner, he gave them the land claimed, and in pursuance of this parol gift they entered in good faith and made valuable improvements, they would have a complete equity as against him and as against all persons who attempted to acquire any interest from him after they had entered into possession and made the improvements and while they were still in possession. This would also be true if their mother was the owner of the property and the gift emanated from her. It was not absolutely indispensable to the completion

of their equity that their possession should continue for seven years. *Garbutt* v. *Mayo*, ante, 269. The allegations in reference to the parol gift and the improvements made on the faith of the same are meager, but possibly sufficient to withstand a general demurrer. But there is no prayer that the title acquired under this parol gift be recognized; the prayers of the petition are merely to restrain the sheriff from putting Williamson in possession of the land sold under the mortgage execution of the bank, and to restrain all of the defendants from interfering with any of the land mentioned in the petition, and to set aside the consent decree and the sale in pursuance thereof, and for general relief. The prayer for general relief would not authorize a decree setting up the title under the parol gift, for it is well settled that no relief can be granted under such prayer except that which is germane or connected with one of the specific prayers. *Steed* v. *Savage,* 115 *Ga.* 97. What might be the rights of these two Sapps in another proceeding, in which they set up their title under the parol gift and ask for an injunction to prevent the sheriff from dispossessing them, we will not now determine; but, under the prayers of the present petition, they are not entitled to a decree declaring them the owners of the property as against the mortgage execution of the bank. They are not bound by the decree as a judgment, and they are not bound by the decree as a contract, for the reason that paper does not purport to divest them of any rights which they might have in the land. They may hereafter assert their title in a proper proceeding with the proper prayers. Whether, if there had been a prayer in the present case for this relief, the petition would have been multifarious we will not now determine. In no view of the case do we think that there was any equity in the petition.

4. As to the defendants who demurred the petition was properly dismissed, but it should not have been dismissed as to the defendants who did not unite in the demurrer. *Ballin* v. *Ferst*, 55 *Ga.* 546 (4) ; *Byrom* v. *Gunn*, 111 *Ga.* 806 (2).

*Judgment affirmed, with direction. All the Justices concur.*