THE STATE ex. rel. LUCINDA B. ASHTON v. JOHN F. IMEL, Judge of Probate, Appellant.

(No. 15528.)

Division One, May 31, 1912.

1. **ADMINISTRATION: Administrator Pendente Lite.** The office and powers of a provisional administrator, appointed to have charge of the assets and to preserve the estate during the pendency of a suit to determine the validity of a will which had named the widow as executrix, became *functus officio* immediately upon a final judgment upholding and sustaining the will, and the executrix *instanter* became qualified to act and to resume possession of the effects.

2. ————: ————: **Appeal from Order by Executrix: Moot Case.** Where the probate court, upon the filing of a suit contesting the will under which the wife was executrix, and the appointment of an administrator *pendente lite*, made an order rescinding a former order of partial distribution and requiring the widow to turn over to said provisional administrator the personal property previously distributed to her, from which she prayed an appeal, and it being denied, she obtained an absolute mandamus compelling the appeal, the appeal of the probate judge from this judgment of the circuit court becomes a moot case upon a final judgment sustaining the will.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman*, Judge.

APPEAL DISMISSED.

*Charles C. Crow* for appellant.

*Fulkerson, Graham & Smith* for respondent.

LAMM, J.—Mandamus. This is a companion case with two others between the same parties, bearing the serial docket numbers of 15529 and 15531 respectively—all submitted on briefs at the same time.

Briefly, its history is this:

In 1906 Thomas Ashton died testate in Buchanan county, possessed of an estate (largely of corporate stocks) and leaving a widow, children and grandchildren. His widow is relator in this suit and the principal beneficiary in his will. Nominated executrix by the will and qualifying as such after its probate in common form, relator took charge and had so far progressed with the administration as to make an annual settlement and (at least) partial distribution—the latter under an order in 1907 made on a showing to the probate court that the estate was in condition to permit it. That order authorized her to make distribution according to the will and file her receipts. Pursuant thereto she distributed to herself and filed her own receipt for 150 shares of named corporate stocks, bequeathed to her by her husband's will. In May, 1908, one of the daughters of Thomas and Lucinda, Mrs. Penfield, brought suit to contest the will. From thence on things moved off at a smartish pace. Straightway she applied to the probate court to have an administrator *pendente lite* appointed during the time of the contest. That application was opposed by the executrix, but on hearing was sustained and one

Zeidler was appointed provisional administrator. Thereat the executrix made application for an appeal from his order of appointment. Her appeal was refused by the probate court. Thereat she applied to the circuit court for a writ of mandamus to coerce such appeal. On a hearing there, her writ was denied and she appealed to the Kansas City Court of Appeals. It, in turn, sent the case to this court. That appeal is the pioneer and principal case of the three, bore the docket number 15531 and has been disposed of by an opinion handed down at this delivery, dismissing the appeal. Going back a little to pick up another thread—Presently, on the heels of Zeidler's appointment, the probate court made a further order in aid of Zeidler's authority, viz., one rescinding and revoking its said order of distribution and requiring the executrix to turn over to Zeidler the corporate stocks theretofore distributed to and receipted for by her. Thereat she timely applied for and was refused an appeal to the circuit court from that order. At that stage she sued out another writ of mandamus in the circuit court to compel the probate court to grant her last appeal. Steps were taken in that case resulting in the award of an absolute writ of mandamus. From that judgment the probate judge, Imel, appeals to this court, and his appeal is the subject-matter of the instant case.

The large question discussed by counsel is, whether under the fifteenth subdivision of section 289, Revised Statutes 1909, an appeal lies from the order revoking the prior order of distribution and compelling the executrix, who by a former order had been suspended temporarily from her functions pending the will contest, to surrender to the administrator *pendente lite* the corporate stock so distributed and held by her as distributee?

But, as in the principal case (*quod vide*), before reaching that question a preliminary matter obtrudes

itself for determination, namely: As appears in the principal case, the will contest ended on February 2, 1910, in the judgment of this court affirming that of the circuit court establishing the validity of the will of Thomas Ashton and probating it in solemn form. Assuming that fact as a premise, does it not follow that the present appeal presents only an abstract or academic question? If we sustain appellant's view, would it avail anything of substance in establishing any existing right to possession of the shares of stock?

Attending thereto, the opinion in the principal case should be read with this. For reasons there given and under the ruling there made, we conclude the present case has become, as was that, a moot case, and that this appeal should also be dismissed. To illustrate: Taking the most favorable view to appellant, if we reversed the judgment awarding an absolute writ of mandamus, the appeal to the circuit court in that event would be denied. But when denied it would leave the corporate stock rightfully in the hands of Mrs. Ashton, as executrix or as distributee, and the probate court woud have no present power to enforce its order turning it over to Zeidler, because his right to it no longer exists. For all practical purposes of the law, his office and powers are as dead as a last-year's bird's-nest, and the executrix has become qualified to act. Hence, she may hold the stock either by virtue of her office or as distributee, as the very right of the matter may be. On the other hand, if we affirm the judgment, the same conditions obtain. In that event, an appeal would be coerced, which, if finally determined in her favor, would be fruitless. It would only give her what she already has, viz., the right to hold the stock, subject to final orders winding up the estate. If victory and defeat be equivalent, why litigate?

" 'But what good came of it at last?'
Quoth little Peterkin.
'Why, that I cannot tell,' said he,
'But 'twas a famous victory.' "

The grandfather's idea of Blenheim, outlined to his grandson as above, is without value in meting out justice in court. Peace hath her victories no less renowned than war, wrote Milton to the Lord General Cromwell, but we opine good must come of them at last, or they do not pass muster in an appellate court.

The point discussed by counsel having become a moot point and the case a moot case, it belongs in a moot court in some moot hall, not here— "We won't hold a moot court." (Per GARY, J., in Aff v. Hopkins, 57 Ill. App. 1. c. 530). So say we all of us.

Let the appeal be dismissed. It is so ordered. All concur.