# THE STATE ex inf. HADLEY, Attorney-General, v. PEOPLE'S UNITED STATES BANK; SPENCER, Receiver, Appellant.

## (No. 2.)

### In Banc, June 20, 1906.

1. **RECEIVERSHIP: Fees: Allowance: Appellate Practice.** Whether or not the sum allowed a receiver for his services was inadequate, is a question of fact, and like other questions of fact is one with which the appellate court has little to do. A trial judge who has personal knowledge of everything the receiver did is in a better position than is the appellate court to put a valuation on the service.

2. ——: ——: **Paid Out of Funds.** Whether or not a receiver by the Post Office Department denying to a bank the use of final judgment depends on the circumstances of the case. Where there was absolutely no jurisdiction in the act appointing the receiver and the appointment was in its nature to the injury of the defendant, the defendant should not be compelled nevertheless to pay for the injury done him.

3. ——: **Fraud Order.** Because a "fraud order" had been issued by the Post Office department denying to a bank the use of the mails, and because of that heavy blow its strength as a banking concern had been much impaired, is no reason, under the statute, for the appointment of a receiver, on the prayer of the State, for a solvent bank. The court should look to the statute alone for power to appoint a receiver, when the receivership is asked for by the Secretary of State.

4. ——: **Fees: Paying Out Deposits: Acquiescence.** The fact that the receiver paid out a large amount of money to depositors during the seven days he was receiver, after which the order appointing a receiver was set aside and the receivership was discharged, as having been made without jurisdiction, and that the bank by its directors acquiesced in that payment, is no reason for allowing the receiver fees for his services. That was no such ratification and acceptance as estop the bank to deny the receiver's claim for fees for those services, for that acquiescence did not indicate an approval by the bank of the court's act in appointing the receiver.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Selden P. Spencer pro se.*

(1)  The court had jurisdiction over the subject-matter, and its appointment of the receiver was not void.  Greeley v. Bank, 103 Mo. 212.  Where there is no person who can handle the property of a corporation, a receiver may always be appointed to preserve the estate.  (2)  Acting under the apparently valid appointment by a court having general jurisdiction, he is entitled to reasonable compensation and his expenses out of the trust fund, even though he was subsequently removed.  Hepfersack v. Hepfersack, 61 How. Pr. 498; Ferguson v. Dent, 46 Fed. 88; Hembree v. Dawson, 18 Ore. 475.  "If the property remains in the hands of the receiver his expenses in taking care of it are charged upon it regardless of ownership."  Heise v. Starr, 44 Ill. App. 406; Pa. Co. v. Railroad, 66 Fed. 421; Land & Cattle Co. v. Bindle, 11 Tex. 263; Alderson on Receivers (1905), sec. 632; High on Receivers (1894), sec. 796; Beach on Receivers (1897), p. 132, p. 840; Gluck & Becker on Receivers (1896), p. 100.  (3) Even if under sections 1305 and 1307, Revised Statutes 1899, the court had no authority to appoint a receiver "to wind up the affairs and business of the bank" nevertheless, under the general power of section 1305, "to grant such relief as the evidence, situation of the parties, and the interests involved may seem to require," as well as under its general equity power, the court could appoint its agent to preserve the estate if it appeared that it was "inexpedient for the corporation to conduct its business."  R. S. 1899, sec. 1305. (4)  In any event the receiver is entitled to reasonable compensation out of the trust fund because it was nec-

essary for him to preserve the fund and incur expense in ascertaining who were the depositors entitled to payment, and in paying them, inasmuch as the payment of depositors was expressly ratified by the bank. The action of the bank in ratifying the acts of the receiver entitled him to the reasonable cost of doing that which was for the benefit of the bank, and was accepted by them. (5) The case is one brought by the State, and not by private parties. The good faith of the transaction is undisputed. The right of the State to do that which is necessary in the superintendence of banking institutions and in the preservation of their estates cannot be questioned. The reasonable cost thereof ought to be paid out of the funds of the bank. R. S. 1899, secs. 1305, 1307. Actions brought on behalf of the State are on somewhat different footing from litigation between private parties. State ex rel. v. Dobson, 135 Mo. 19. (6) The amount of the compensation allowed by the court, considering the large sum of money for which the receiver was responsible, and the character of services required of him, was inadequate. State ex rel. v. Grabill, 69 Mo. App. 536; Smith on Receiverships, p. 548, sec. 350. (7) The allowance for the receiver and for his attorney and expenses ought to have been made out of the fund which the receiver preserved, and was a proper charge against it, and should not have been taxed as general costs in the case. St. Louis v. St. Louis Gas Light Co., 87 Mo. 224, 11 Mo. App. 237. (8) The court could not tax the compensation of the receiver as costs, for items of cost must have a definite statutory authority, and there is no such warrant in this case. Jackson County v. Stone, 168 Mo. 581. (9) The receiver is but the agent of the court. Even if the court has made a mistake, the party against whom the mistake is made must look for compensation to the person who invited it. He cannot defend against the expense incurred under the order of court and necessary in the administration of the estate. 23 Am. and Eng.

Ency. Law, 1106, 1107; Smith on Receiverships, p. 589, sec. 350 (f.)

Carter, Collins & Jones and Barclay, Shields & Fauntleroy for respondent.

(1) Under the Missouri statutes, there is no authority for the appointment of a receiver on the facts shown in this case; neither could there be an appointment of a receiver for a solvent corporation, on the facts stated in the first petition, under the general equity powers of the circuit court. R. S. 1899, secs. 1305, 1307; Miller Bros. v. Perkins, 154 Mo. 637. (2) Even if the court had power to appoint a receiver, and the facts would warrant such action, the appointment of the first receiver in this case was absolutely void, for want of proper allegations of fact to show an exigency permitting such an appointment in advance of any notice, or rule to show cause, given to defendant. 17 Ency. Pl. and Pr., 735; Tuttle v. Blow, 176 Mo. 171; Moyers v. Corner, 22 Fla. 422; Rees v. Andrews, 169 Mo. 177; State v. Dearing, 184 Mo. 660; Crowder v. Moone, 52 Ala. 220. (3) Where a receiver is appointed on an order absolutely void in every respect, he cannot recover any compensation whatever out of the fund. Verblank v. Ins. Co., 2 Paige 438; Cooper v. Shirley, 75 Fed. 168; Bank v. Payne, 140 N. Y. 321; Ogden City v. Bear Lake Co., 18 Utah 279; Weston v. Watts, 45 Hun 219; Moyers v. Corner, 22 Fla. 222; Railroad v. Wear, 135 Mo. 230; Higley v. Deane, 64 Ill. App. 392; French v. Gifford, 31 Iowa 428.

VALLIANT, J.—The Attorney-General at the instance of the Secretary of State on July 10, 1905, filed in the circuit court of St. Louis county, as if under the authority of section 1305, Revised Statutes 1899, a suit against the People's United States Bank, a banking concern doing business in St. Louis county, alleg-

ing in the petition that the bank was doing business
in an unsafe and unauthorized manner, that a peculiar
feature of its business was that its intercourse between
it and its stockholders and depositors was conducted
largely through the United States mails and that the
Post Office Department had issued a fraud order
against it which virtually put an end to its operations.
The petition prayed the court "to appoint a receiver
to forthwith take charge of said People's United States
Bank of St. Louis, Missouri, to wind up its affairs and
business for the benefit of its depositors, creditors and
stockholders, and to do and perform all necessary acts
for the purpose of taking possession of the property
and assets of said bank, and for the winding up of
its affairs and collection of its outstanding accounts,
and such other acts as in the opinion of the court may,
from time to time, be necessary."

Immediately on the filing of that petition and with-
out notice to the bank the court appointed a receiver
and authorized him to take possession of the bank
and all its assets and hold the same subject to the
order of the court. The receiver gave bond and took
immediate possession of the bank and its assts which
amounted, according to his report, to $2,679,244.79.

Within two days thereafter the bank filed a mo-
tion to set aside the order appointing the receiver,
which coming on to be heard on July 17, 1905, was by
the court sustained and the receiver was ordered to
return to the bank all its assets in his hands.

In sustaining the motion the court in a written
opinion filed, after summarizing the statements in the
petition and showing that there was no averment or
evidence of insolvency, said: "The application was
presented as one coming under this mandatory require-
ment of the second part of the section. But upon more
careful consideration of the statute and the petition,
after argument of counsel, the court is satisfied that

197 Sup.—39

such is not the case and that the appointment summarily made without notice was without authority or jurisdiction. The alleged 'fraud order' may be a serious hindrance to the business of the bank, and may necessitate a change in its business methods, but does not render the bank insolvent or seriously jeopardize the safety of its depositors or other indebtedness."

In obedience to the order of the court the receiver returned to the bank all of its assets except the money that he had disbursed under orders of the court and except the sum of $12,100, which he asked to retain to cover the costs of his receivership and compensation for his services. The court refused that request and the receiver returned the $12,100 also to the bank. There was no appeal from the order of the court revoking its order appointing the receiver.

On the next day after his appointment the receiver reported to the court that the total deposits in the bank did not exceed the sum of $225,000, and that he had in his hands upwards of $1,000,000, and asked authority to pay the depositors, which was granted and he immediately began paying them and had up to the time of his discharge paid $24,511.05, under that order, to depositors; the bank afterwards ratified and approved those payments.

On October 21, 1905, the motion of the receiver for an allowance for his costs and compensation came on for hearing, and the court made an order allowing him $2,500 for his compensation for seven days' service, $500 for his attorney's fees, and $150 for legal advice from another attorney, and ordered that the total amount, $3,150, "be taxed as costs incurred by the plaintiff in this action subject to the future order of the court in respect to the costs herein." From that order the receiver has prosecuted this appeal.

There are two points urged by appellant, first, that the sum allowed is inadequate, second, that he should have been allowed to retain the sum out of funds that

had come into his hands as receiver without the hazard of having it taxed as costs to abide the result of the suit.

I.   The first point presents a question of fact and like all questions of fact it is one with which an appellate court has little to do.   In such case unless the amount is so unquestionably inadequate or so manifestly excessive that the appellate court is convinced that it was the result of some other cause than deliberate judgment, deference will be given to the conclusion of the triers of the fact.   In this instance the trial judge himself had personal knowledge of everything the receiver had done and was in better position than we are to put a valuation on the services.   No unfriendly motion could have swayed the deliberate judgment of the trial judge, his selection of the receiver was proof of his appreciation of him, and his discharge of him was without reflection on his conduct, and was based solely on the law that the appointment was "without authority or jurisdiction."

In the brief we are told that more than two and a half million dollars had passed through the receiver's hands, that to qualify himself to handle so large a sum he had given a large bond and had paid a large price for it.

It is also said in the argument that responsible business firms handling so large an amount, even if it should take but a day, would expect to be paid many times more than is asked in this case. We have no judicial cognizance of what responsible financial concerns charge for their services, and there is no evidence on that point, hence we cannot measure the services of the receiver by that standard. But even if there was evidence showing the estimate in the market of such services, we are not sure that it would aid us in this inquiry, because there might be other considerations than the mere handling of the money to be taken into account. A large business transaction might by

passing ,through the hands of a concern of great re-
pute, gain credit, and the concern might charge for
the use of its name, but it does not follow that the
assets of a bank or other business concern are ap-
preciated in value by having been taken possession of
by a receiver.

But however that may be, all the facts bearing on
the question of the value of the receiver's services were
before the court whose agent the receiver was; that
court has weighed them and rendered its judgment and
with that this court must be satisfied.

II.    The main grievance on which appellant in-
sists is that he was not allowed to retain the sum out
of the assets of the bank in his hands.

The question of whether or not a receiver should
be paid out of the funds in his hands regardless of
the final judgment depends on the circumstances of the
case.    Sometimes property of a character liable to
waste or destruction becomes involved in a lawsuit
between parties with conflicting claims to it, and to
preserve it while the litigation is going on a receiver
becomes necessary, and the services that he renders is
for the benefit of the defendant, even though the judg-
ment in the end on the matters in litigation should be
entirely in his favor.    Therefore, in some such cases,
justice would charge the property preserved with the
cost of preserving it; but even in such case, when the
defendant recovered judgment for his costs, the judg-
ment usually includes the cost of the receivership
which he has paid, and he is entitled to execution for
it against his adversary.    But in such case the receiver-
ship is only an incident to the litigation, and is author-
ized only when the property is of such a character
as, in consequence of the effect of the litigation, the
defendant is unable while the suit is pending to utilize
it.    That is not the case at bar.    Here the only purpose
of the plaintiff is, as expressed in the prayer of the
petition, to take the assets of the bank out of its hands

and wind up its affairs; there is no other litigation; if the plaintiff is not entitled to what it asks, then there was no legal ground for the receivership.

Reference is made in the brief of appellant to the fact that a fraud order had been issued by the United States Post Office Department against defendant, and in the petition that fact is averred and the conclusion drawn that that would prevent the bank continuing business, and in the order appointing the receiver that fact is mentioned as if it was a ground for such action. It is not claimed that the appointment of the receiver was made to protect the bank from the injury it received at the hands of the Post Office Department, but on the contrary the theory seemed to be that because it had received a heavy blow from that source its vitality as a banking concern had ceased and there was nothing left to do but to administer on its estate. But we have nothing to do with the fraud order; this is a proceeding founded on section 1305 of our statute, without which the Secretary of State has no authority to institute such a suit, and the court should have looked to that statute alone for its jurisdiction; it could derive no authority eminating from the head of an executive bureau; that order affords no reason for the appointment of a receiver. We must therefore proceed to the consideration of the question before us with the conclusion that the learned trial judge after due deliberation and second thought was right when he said that his act appointing the receiver was "without authority or jurisdiction." It was absolutely wrong and a violation of the defendant's rights.

We are referred to authorities which hold that as a general rule the receiver is entitled to his pay out of the funds in his hand regardless of what the final judgment on the merits of the case may be, and we are prepared to accept that as a general rule, with the qualification we have herein above mentioned. But we have not been pointed to any authority which holds that,

where there was absolutely no justification in the act appointing a receiver and the act was in its nature to the injury of the defendant, he should nevertheless pay for the injury that was done him, and if there are such authorities we do not care to see them.

In Alderson on Receivers, section 633, the author quotes the following from the Supreme Court of Iowa which we think correctly states the law: "It is insisted by plaintiff's counsel that the compensation of the receiver should be paid out of the fund of which he had the custody and charge, and that he should be permitted to retain the same therefrom. Numerous cases have been cited to show that such is the uniform practice. Upon examination of these cases, it will be found that in every case there was no question made as to the legality or propriety of the appointment of the receiver, and that in each case the receiver closed up the business and settled his accounts in pursuance of his appointment. The receivership in each case was for the benefit of those interested in the fund, and he was paid therefrom, which is only another method of apportioning the costs upon those entitled to the fund. . . . We think it would be an unjust and inequitable rule if in all cases the receiver should be entitled to his compensation out of the funds in his hands without reference to the legality of his appointment. Under the operation of such a rule innocent persons might be made to suffer great loss."

That language from the Iowa Court was quoted and approved in St. Louis v. St. Louis Gas Light Co., 11 Mo. App. 237, the opinion in which case by Judge THOMPSON was expressly adopted as the opinion of this court when the same case came here on appeal. [St. Louis v. Gas Light Co., 87 Mo. 224.]

The very question we now have before us was the sole question in that case. The city of St. Louis had in a previous suit against the Gas Light Company caused a receiver to be appointed, who dispossessed

the company of all its property and carried on the business during the years of the litigation; in the end it was adjudged that the city had no right to the property and that the taking of it out of the hands of the defendant company by means of a receiver was wrongful. The receiver's compensation was assessed at $45,043.50, and ordered to be taxed as costs, which meant that the same was to be paid by the city, the losing party. In that case the receiver had managed the property well and had made large profit for the corporation and it was insisted by the city that the receiver should be paid out of the funds which his own industry and skill had accumulated, but the court held that the city must pay the costs.

In the brief for appellant it is said that the payment by him of a large amount of money to the depositors was ratified and approved by the defendant bank, and it now should not be heard to deny the propriety of at least that much of the receiver's acts. But that ratification or approval is in legal effect like that of a man bound with cords and despoiled of his property, and who while in the toils consents that his keeper may use a portion of his funds for a lawful purpose. There was nothing in that to indicate an acquiescence in the act of the court appointing the receiver. When those payments were being made the defendant's motion to revoke the order appointing the receiver was on file and the defendant was pressing it to judgment with all its power.

The fact that the State of Missouri is the plaintiff and that no judgment for costs can be rendered against the State cannot alter the result. If the defendant is not otherwise liable it cannot be rendered liable by the fact that there is no one else against whom the judgment can go.

The learned trial judge decided this point correctly. The judgment is affirmed. *Gantt, Burgess, Fox* and *Graves, JJ.,* concur; *Brace, C. J.,* not sitting; *Lamm, J.,* dissents.