.THE STATE ex rel. FREDERICK E. FISCHER, GREAT WESTERN LIFE INSURANCE COMPANY and INTERNATIONAL LIFE INSURANCE COMPANY v. WILLIAM C. THOMAS, Judge.

**In Banc, March 28, 1913.**

1. **PROHIBITION: Motion by Person Not Party: No Notice.**
Where suit was brought in the circuit court by stockholders of an insurance company, praying for an injunction and asking for the appointment of a receiver, and a receiver was appointed, and before the company appeared, a writ of prohibition against the judge was applied for, and issued by the Supreme Court, and an order was made restoring the *status quo*, and thereupon the injunction was dismissed, a motion thereafter filed by the receiver in the Supreme Court, without notice, asking for an order for a return of the properties of the company to him, or the payment of a sum sufficient to pay his expenses and costs, in case it be held that the preliminary rule in prohibition was improvidently made, will be stricken from the files—first, because no notice was given, and, second, because movent is not a party to the prohibition suit.

2. ————: **Dismissal of Circuit Court Case: Costs: Moot Case.**
Where plaintiffs, after the preliminary writ in their suit of injunction was issued and a receiver was appointed and defendants had applied for and obtained from the Supreme Court a preliminary writ of prohibition prohibiting the judge of the circuit court from proceeding further in the cause and restoring the *status* existing at the time the injunction was brought, voluntarily dismissed their suit in the circuit court and final judgment was entered, the prohibition suit becomes a mere moot case, involving at best only the undisposed of question of the taxation of costs in the lower court, and will be dismissed.

### Prohibition.

DISMISSED.

*Brownrigg & Mason* for relators.

This court should make the writ of prohibition final because: The court below, by dismissing the suit

as to the relators and ordering that they go hence without day and have judgment for all costs, has put it out of its jurisdiction to make any order concerning receiver's fees or other costs in the case affecting the relators or either of them or which can be a claim or lien on any property of either of the relators.

*Robinson, Goodrich & Robinson* and *Willard P. Hall* for respondent.

The circuit court, in ordering the dismissal of the receivership case on the motion of plaintiffs herein, properly resumed jurisdiction to settle the accounts of the receiver, to make allowance in the receiver's favor, and to make all other further and proper orders in the receivership. The expenses of the receivership are chargeable against the fund. The dismissal of the suit in which there is a receivership does not *ipso facto* discharge the receiver. The receiver continues in office until his accounts can be settled, allowances in his favor made, and the offices of the receivership orderly wound up. And all the expenses of the receivership are dischargeable against the property in the possession of the receiver. The fund bears the cost of the receivership. This would be perfectly clear after a receiver had been in office for a long time, say for a year, administering a large and intricate estate, in the doing which large expenses had been incurred. In such a case plaintiffs could dismiss the suit and end the necessity of the receivership, but there would still remain the receivership to be ended by the court's orders, after settlement with the receiver. The same rule applies to all receiverships alike, the big and the little. 34 Cyc. 174, 452; 17 Ency. Pl. & Pr. 844; Alderson on Receivers, sec. 632. Even where the order of appointment is reversed, the receiver is not thereby discharged. Neither is he deprived of the right to compensation and expenses, to be paid out of the fund.

Matter of Murray Hill Bank, 14 N. Y. App. Div. 318, 152 N. Y. 199; 34 Cyc. 172. If the receiver was legally appointed, the fact that plaintiffs in the receivership case adjusted their differences with the International cannot change these elementary rules of practice. The International by means of the consolidation obtained all the property of the Great Western and became liable for all the latter's debts. If this court should reach the conclusion that the provisional rule issued by it was improvident, and that it should be vacated and relator's petition dismissed, it should make the necessary orders to authorize the circuit court to settle the accounts of the receiver, to allow compensation for the receiver, and to discharge the receiver so as to release the receiver's bond. And this court should further adjudge the costs and expenses of the receivership against the International, which has all the property of the Great Western.

LAMM, C. J.—The Great Western Life Insurance Company was a domestic corporation in the line of business imported by its title. The International Life Insurance Company was the like. The two took steps heading to a consolidation. To that end a petition was presented under Revised Statutes 1909, section 6936, as amended in 1911 (Laws 1911, p. 264) to the Honorable Frank Blake, Superintendent of the Insurance Department of the State, accompanied by an exhibit of the agreements and plans for consolidation with the reasons therefor. Said superintendent, as authorized by the statutes referred to, had called to his assistance the insurance commissioners of two other States to "form a commission" to hear and determine whether the consolidation should go on the terms proposed, or on others to be substituted, or at all. Due notice had been given and a partial hearing had by the commission at a named place in St. Louis on a day set in the notice, to-wit, November 11, 1912. Objections

developing, and the matter being wholly *in fieri* at the close of the St. Louis hearing, the commission adjourned to meet in Kansas City on November 25, to complete the hearing and make findings. Four days before it met pursuant to that adjournment, a Mr. Green and three other stockholders of the Great Western (holding four shares of stock in the one thousand outstanding) brought a suit against the two companies, a Mr. Fischer and one Stevenson in the Jackson Circuit Court, charging fraud and corruption in the scheme for consolidation, and injury to stockholders, policyholders and creditors, with a maladministration of Great Western corporate affairs, and praying for an injunction and a receiver. A receiver (a trust company) was appointed by respondent without notice, and ordered to take possession of the properties, offices, books, etc., of the Great Western on giving bond, and defendants were ordered to appear and show cause why the receivership should not be made permanent on a hearing, the date to be fixed upon application. Giving bond *instanter,* the receiver took possession of the offices, assets and books of the Great Western as ordered. Two days later said insurance companies and Fischer filed their suggestions here for a writ of prohibition against respondent, the gist of them being lack of jurisdiction to entertain the bill for an injunction and a receivership while the question of consolidation was before the commission in usual course of orderly administrative detail under said statutes relating to consolidation of insurance companies.

We passed a preliminary rule citing respondent to show cause. As a part of that rule the *statu quo ante bellum* (to borrow a warlike term) was re-established, and the books, offices and properties of the Great Western were ordered restored to that company until our further order. Our rule being served and those things done, thereafter plaintiffs in the receiv-

ership suit, on November 27, dismissed that suit by entry, reading:

"Now on this day come the plaintiffs, in open court, and upon application of plaintiffs, this cause is by the court dismissed without prejudice.

"Wherefore, it is ordered and adjudged by the court that this cause be and the same is hereby dismissed; that said defendants and each of them go hence discharged without day and have and recover of and from the said plaintiffs all costs herein, and that execution issue therefor.

"And it is further ordered and adjudged that this court retain jurisdiction of the receivership with power to settle the receiver's account, to allow compensation to the receiver herein, and to make all other, further and proper orders in relation to the receivership herein."

Thereafter respondent made return to our rule and relators filed a motion for judgment on the pleadings. Thereafter, without notice, the receiver filed a motion here for an order for return of the possession of the property, or payment of a sum sufficient to cover his expenses and compensation, in case our rule was held improvidently made. This last motion **Motion by Non-Party.** is stricken from the files. As said, no notice was given thereof and besides that, movent is not a party to the suit in this court. See ruling on Seibel's motion in Gass v. Evans, 244 Mo. 329. So, our jurisdiction to graft in the main stem of the suit an issue of the sort outlined in that motion is not clear. [Wait v. Railroad, 204 Mo. l. c. 504, et seq.]

It is suggested in a brief filed for respondent that the parties to the litigation in the circuit court "settled their differences." It is suggested in that of relators that the judgment of dismissal has no such significance, *contra*, that the parties suing for a receivership presently, after our rule was served, went into

the Federal court with a bill for like relief (to cut behind the jurisdiction of the State courts) and that court moved by comity was disinclined to proceed since the State court had assumed jurisdiction; that thereupon plaintiffs dismissed their suit to clear the deck for action in the Federal court. Those contentions are mere makeweights and coloring matter. We lay them out of view.

A formidable array of questions is discussed in briefs—e. g.: Some, relating to the sufficiency of the petition for prohibition; some, to the sufficiency of respondent's return; some, to the office of a motion for judgment on the pleadings as a demurrer and the office of a demurrer in searching prior pleadings; some, to the jurisdiction of the circuit court in the receivership suit; some, to the proper construction of insurance statutes involved; some, to whether those statutes oust the jurisdiction of a court of equity in such consolidations where the Superintendent of the Department of Insurance is proceeding to determine the right to and terms of a consolidation, as here; some, to the merits of the controversy raised by the recalcitrant stockholders anent the consolidation. They one and all are reserved for consideration in a live case turning on them. This case has become a mere moot case, or, at best, an undisposed of question of the taxation of costs below in a cause that has reached its end in the circuit court by a final judgment of voluntary dismissal.

*Questions Reserved.*

*Moot Case.*

We do not sit as a moot court to determine speculative questions for the benefit of some other case in judgment at some other time. Mark the actual situation. If we prohibited the circuit court from proceeding—*cui bono?* It has effectually done that by itself. The receivership suit is dead, and henceforth is of no use (except to point a moral). If we held the circuit court had jurisdiction to proceed with that suit—wherefore? It has effectually tied its own hands and

could not lift a finger in proceeding to adjudge the merits. Yet if we proceeded to judgment on the merits we would have to do one or the other of those two things and in either event our judgment would amount to the same thing, viz., *nothing*. Shall a court that is (and has been invited to be) about the serious business of settling a grave question of jurisdiction, turn aside to emit a mere squeak on costs as the be-all and end-all of the matter? We do not sit in the comedy of Much Ado About Nothing, if we know it in advance.

As to costs, while the circuit court by its judgment has determined the *liability* for costs generally, it has not ruled on the taxation of that part of them relating to the compensation and expenses of its receiver. When it does tax them as costs, if ever, will its action not be open for review in the ordinary way in the proper appellate court on the appeal of the injured party? Why should we put it in leading strings in advance? Or assume it will err if left to itself? If it be said that by our order and rule we have taken the "fund" away from the receiver out of which it could, might or should reimburse itself for its expenses, etc., thus protecting plaintiffs from being mulcted, the answer is plain, viz., plaintiffs in that suit, if fearful the cost shoe might pinch in the future, should have thought of that before dismissing the receivership suit, thereby putting a barrier up to our restoring the property to the receiver to be administered upon. Count the costs! Look before you leap, are precepts of use in, as out of, court. The expenses and compensation of a receiver are but costs (R. S. 1909, sec. 2020) to be taxed and paid as such. The will of the lawmaker in that regard stands for its own reason. When a suit for a receivership is disposed of by a judgment against the moving party, expenses and compensation do not always come out of the assets of the successful party. [State ex inf. v. Bank (Spencer, Receiver), 197 Mo. l. c. 612, et seq., and cases cited.]

On the reasoning and authority of the three very late cases of State ex rel. v. Imel, 243 Mo. 174, 178 and 180, and cases therein cited and followed, this has become a moot case to all intents and purposes and should be dismissed. It is so ordered. All concur.