CHRISTIAN WOMEN'S BENEVOLENT ASSOCIATION *et al.*
*v.* ATLANTA TRUST COMPANY *et al.*

No. 10648. JANUARY 14, 1936.

*Herbert J. Haas, George B. Tidwell, J. W. Mason, Craighead &
Craighead,* and *Dwyer & Dwyer,* for plaintiffs in error.

*Crenshaw & Hansell, Alston, Alston, Foster & Moise, Jones,
Powers & Williams, Branch & Howard, Arnold, Gambrell & Arnold,
Harold Hirsch, Marion Smith, Ernst, Gale, Berman & Falk,* and
*Neely, Marshall & Greene,* contra.

RUSSELL, Chief Justice. The Atlanta Trust Company, as trus-
tee under a security deed conveying property in Atlanta known as
the Hurt Building, filed in the superior court a petition to foreclose
the deed as an equitable mortgage. The deed was made to secure
an issue of bonds aggregating $4,500,000. To this action certain
pleas setting up usury were filed, and proceedings were also insti-
tuted in the Federal court. Holders of all but a relatively small
portion of the bonds confided their respective interests to two com-
mittees, one called the Atlanta Bondholders Protective Committee,
and one called the Roosevelt Committee. The bonds so committed
were all the $3,825,000 of bonds secured by the deed which were
outstanding at the time of the institution of the foreclosure pro-
ceedings, except about $400,000. The litigation over the foreclosure
of the security deed was still in progress in November, 1933, when
an agreement was entered into between Tenir Corporation, a Geor-
gia corporation, and the two committees named, whereby the former
agreed to purchase bonds secured by the security deed in question,
which had been deposited with the two committees, at a price of
fifty-five cents on the dollar of the principal of such bonds. This
contract provided that the purchase-price of the bonds was to be
paid within ninety days from the time the sale was approved. It
does not appear from this contract that a sale of the Hurt Building
was contemplated, but that only a sale of the deposited bonds was
in view. However, in the notice sent to bondholders by the two
committees, relative to the contract with the Tenir Corporation, it

was stated: "The committees are informed that the only asset of the Tenir Corporation at the present time is the $100,000 cash deposit which has been made with the committees pursuant to the attached agreement. Tenir Corporation has advised the committees that it can complete the purchase of the deposited bonds only if it can acquire title to the Hurt Building prior to the time that the purchase-price of such bonds is to be paid, so that such corporation can use the proceeds of a new first mortgage loan upon the property and the amount of cash in the hands of the receivers distributable to the deposited bonds toward paying the purchase-price for the said bonds."

After a hearing, the judge of the Federal court in New York, under which the Roosevelt Committee was functioning, entered an order approving the sale of the bonds deposited with the Roosevelt Committee at fifty-five cents on the dollar, conditioned on the superior court of Fulton County, Georgia, likewise approving such sale of the bonds deposited with the Atlanta committee; this order providing that if the action of Fulton superior court was unfavorable, the judge would pass an order of disapproval. At the hearing on this matter in Fulton superior court, held on January 15, 1934, the members of the Atlanta committee appeared in person and through counsel and urged approval of the proposed sale. The receivers in whose charge the property involved had been placed in the litigation appeared with their counsel, and under order of the court produced a real-estate expert who testified that in his opinion the value of the Hurt Building property was between $2,000,000 and $2,500,000; that the property was renting for more than 15% on $2,500,000, and a purchaser at that figure would have a good buy and stand a good opportunity to sell at a profit. Two other experts testified to a similar opinion. The receivers testified that from February 3, 1932 (when they began managing the property as receivers), to January 15, 1934, they had accumulated cash on hand to the amount of $659,000 as net income of the Hurt Building over all operating and other expenses including $50,000 which had been paid in on account of expenses of litigation, and that net rentals were then accruing at the rate of $32,000 per month.

Before the hearing held on January 15, 1934, Christian Women's Benevolent Association and Alvin Steinhart, bondholders who had deposited their bonds with the Roosevelt Committee, Mrs. Minnie

Wolfson who had deposited her bonds with the Atlanta committee, and E. C. Eaton, a bondholder who had not deposited his bonds with either committee, filed petitions on behalf of themselves and other bondholders similarly situated, praying that they be allowed to intervene and be made parties, and resisted the proposed sale. The interventions were allowed over objections. At the hearing on January 15, 1934, the attorneys for the intervenors, by cross-examining the witnesses, undertook to develop evidence that the proposed sale should not be approved by the court. No objection was made by other persons or counsel, except that a small minority of bondholders voiced disapproval by letters or personally at the hearing when the court called for an expression of views from bondholders. Counsel for the intervenors made the only arguments against the approval of the sale. The court took the case under advisement, and on January 22, 1934, passed an order that the proposed sale should not be made. The filing of the interventions on or before the date of the hearing in January, 1934, was the first appearance of the intervenors in the litigation, which had been pending for about two years.

On October 30, 1934, the intervenors filed an application praying that the court decree payment of their expenditures and reasonable counsel fees incurred in opposing the sale of the bonds. By answers and demurrers the Atlanta committee and the trustee opposed this application. The intervenors moved to strike the demurrer and the answer. It appeared on the hearing that the cash in the hands of the receivers of the Hurt Building had increased about $300,000 between January, when the proposed bond sale was disapproved, and November, the time of hearing on intervenors' petition for expenses. On this hearing the intervenors introduced as witnesses three attorneys, who, in answer to hypothetical questions, testified that in their opinion a valuable service had been rendered to the trust estate by intervenors, which caused the value of the estate to be increased, and that a reasonable fee for intervenors' counsel would be between five and ten per cent. of the amount of the increase. It was contended by intervenors that the value of the estate had been increased by at least $800,000 by the sale of the bonds at fifty-five cents on the dollar being prevented, calculated as follows: Bonds totaling $3,825,000 were outstanding, which at the price of fifty-five cents on the dollar would have brought the bondholders $2,-

100,000. By defeating such sale there was left for payment on the bonds the Hurt Building, worth at least $2,000,000, and something over $900,000 cash in the hands of the receivers.

Also introduced on this hearing was a brief of the testimony adduced at the hearing in January when the proposal was disapproved by the court, and a brief of the security deed which was being foreclosed. Intervenors claimed that they were entitled to the expenses and allowances prayed for, under the terms of this deed. Article 9, section 1, of this deed provides that on certain conditions the trustee may cause the property to be sold, or otherwise to enforce bondholders' rights. Also: "Compensation for the services of the trustee and all costs and necessary expenses incurred by the trustee in connection with any such action or suit, or in the preparation therefor, or incurred by bondholders in a proceeding instituted under sections 3 and 8 of this article, or in the preparation therefor, shall become so much additional indebtedness secured by this indenture." It is provided in section 3: "In the event that said trustee upon the request of the holder or holders of bonds . . shall refuse or fail to commence any proceedings in foreclosure or to take possession of the mortgaged premises or advertise the same for sale as hereinabove provided they shall do, and such refusal or neglect shall continue for thirty days after such request is made, . . then said bondholders . . may take and have such proceedings or remedies as herein provided the trustees shall take or have." It is provided in section 8 that "Whenever under the provisions hereinabove contained it shall have become the duty of the trustees to institute legal proceedings upon the written request of the requisite number of bondholders, . . and the trustee shall have refused or failed to act within thirty days after such request and tender of indemnity satisfactory to them, then and in such case the same number of bondholders and/or coupon holders, who under the provisions hereof have the right to demand action by the trustees, may jointly institute such proceedings in law or equity as the trustees were or are authorized to institute." It is provided in section 4: "In case of a sale under this instrument of said mortgaged property or any part thereof, the proceeds of such sale, unless otherwise provided by law, shall be applied . . to the payment of all costs of the action, including compensation of the trustees and/or of said bondholders or holders of coupons as the case may be, and their agents, attorneys,

and counsel, and of all costs and expenses of such proceedings as provided in section 1 of this article."

The order of the court was as follows: "The court overrules all objections to hypothetical questions and to opinion evidence, and has considered such as was based on proved facts. The court does not pass upon the demurrer filed by the bondholders committee, but has considered all the contentions and evidence as a matter of law and fact. The court is called upon to decide whether or not intervenors are entitled to compensation for their attorneys and for reimbursement for certain expenses. It is contended, first, that such allowance should be made under the express terms of the trust indenture. The court is of the opinion that no such right accrues to them under or by virtue of such instrument. It is further contended that such allowances should be made for services and expenses under the general provisions of Code sections 5488 and 5489, and of the provisions of the law of this State, because financial benefit to the estate resulted from such service. In this view the court can not concur as a matter of law, applied to all of the contentions and all of the evidence. It is the opinion of the court that while such counsel have rendered some service and assistance to it, as did perhaps other counsel, in deciding the issues under the proposal of January 6, 1934, nevertheless that service and assistance is not such as authorizes compensation or reimbursement from the trust funds. Their appearance was as counsel representing dissenting or objecting parties. The fund and property was already in court, and to its discretionary orders, and legally, in the sense of the Code, was neither created, increased, nor otherwise added to by any action of such counsel. Neither can the court accept a view that services were rendered the receivers or such as were beneficial to the court or its trust, in any sense contemplated by law as a basis for reimbursement. The court does not believe that it is vested with any discretion, and has not exercised any discretion in this matter. Counsel objecting to this allowance contend that it can not be allowed, because the application of January 6, 1934, contemplated merely a sale of bonds, and did not contemplate a sale of the property or of the trust estate. The court does not share in this view, since the final administration of the entire estate was then contemplated. The prayer of the petition or intervention . . seeking compensation for counsel and reimbursement of expenses is therefore denied." The intervenors excepted, assigning error on this judgment.

1. Where a suit was brought by individual holders of bonds issued by a corporation in receivership, and the suit resulted in no benefit to the corporation or to its bondholders, either by increasing the funds in the hands of the receivers or by subjecting additional property to the receivership, it was not error for the court to deny an application of attorneys of unsuccessful intervenors for allowance of fees from the general funds already subjected to the receivership before the applicants intervened.

2. "The relation of attorney and client is created by contract; and litigants who have not thus assumed liability for attorney's fees can not generally be held liable therefor, although they have been benefited, directly or indirectly, by the attorney's services." 2 R. C. L. 1052, § 156.

3. A court of equity in its discretion will order an allowance of counsel fees to a complainant who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund or common property, or who has created at his own expense, or brought into court, a fund in which others may share with him. *Eckford* v. *Atlanta,* 173 *Ga.* 650 (160 S. E. 773), and cit. The principle just stated does not apply in ordinary adversary proceedings. The plaintiffs in error intervened in an action in which the court had already appointed receivers qualified and empowered to do any act in the preservation and protection of the funds in custodio legis which the bondholders could do; and it is not shown that the plaintiffs in error created at their own expense or brought into court a fund in which others may share.

4. "The allowance of counsel fees from a fund is capable of great abuse, and should be exercised with the most jealous caution in regard to the rights of litigants, lest thereby the administration of justice be brought into reproach. In most cases it is better to leave those concerned to contract for the compensation to be paid for the services rendered or received." *Eckford* v. *Atlanta,* supra.

6. Under the foregoing rulings the judge did not err in refusing to allow counsel fees in the circumstances of this record.

*Judgment affirmed. All the Justices concur, except Hutcheson, J., who dissents.*

ATKINSON, J., concurs in the result.