*Corbitt & Sumner,* for plaintiff in error. *E. R. Smith,* contra.

## CROCKETT *et al. v.* WILSON.

No. 11819. JUNE 18, 1937.

*C. C. Crockett, W. W. Larsen Jr.,* and *L. F. Watson,* for plaintiffs in error.

*J. S. Adams* and *Carl K. Nelson,* contra.

HUTCHESON, Justice. Crockett purchased a tract of land from Wilson in 1923, made a cash payment, executed a series of purchase-money notes, and went into possession of the land under a bond for title. Some payments were made on the notes over a period of ten years, but Crockett defaulted on two notes for the principal sums of $1,000 and $6,000, due January 1, 1927, and January 1, 1928, respectively. He also failed to pay the taxes for the years 1935 and 1936, in the sum of $376.75. In 1936, Wilson brought suit in the city court of Dublin, praying for judgment on the notes and for a special lien against the land. The defendant filed an answer to this suit, and the plaintiff filed a demurrer to the answer, and filed two amendments to

his petition. In 1937 Crockett filed in the superior court of Laurens County a petition praying for injunction against the city-court suit, and that the case be transferred to the superior court in order that he might obtain equitable relief. He alleged that in 1935 he and Wilson entered into an agreement whereby Crockett was to pay $250 cash and execute a note for $8,000, due five years afterward; that Crockett was to execute to Wilson a security deed with power of sale; that Crockett paid to Wilson $100, and later paid him $50; that Crockett then procured a purchaser ·for the land for $9,945, $8,000 of which was to represent the balance of the purchase-price which Crockett owed to Wilson under the alleged new agreement, which was in parol, and Crockett was to pay the balance of the cash sum owing to Wilson; and that Wilson refused to carry out this agreement, and retained the $150 cash payment, stating that he would apply it on the notes due by Crockett to Wilson. Crockett prayed that this agreement be specifically performed.

Wilson filed an answer in the nature of a cross-petition, in which it is averred that the agreement pleaded by Crockett was in parol, has not been performed in any particular, and was not to be performed within a year; that although Crockett has owed him $7,000 principal since 1923, he has failed and refused to pay any part of the principal, and during the past ten years he has paid only $1,079.82 on the debt, or an average of $108 per year or about 1½ per cent. interest, although the notes bear interest at the rate of eight per cent; that Crockett has been in possession of the land since 1923, farming, and receiving the rents and profits therefrom, but has not paid the taxes thereon for 1935 and 1936; that the annual rental value of the land is from $700 to $1,000; that Crockett has refused to turn over the land to Wilson, and refuses to pay rent, although demand has been made therefor repeatedly; that at each succeeding term of the city court Crockett has had the pending case continued, and has refused to let the case come up for trial; that in 1936 Crockett entered with L. M. Barron and T. D. Barron into a contract whereby he agreed to sell them the land for $9945, and delivered to them possession of the land; that $9945 was less than the sum due to Wilson by Crockett, and the sale was made without the knowledge or consent of Wilson. Being unable to make title to the Barrons, Crockett

rented the land to the Barrons for the year 1936 for $700, which sum Crockett appropriated to his own use. Crockett also procured from the Barrons a rent note for the land for 1937, which note was transferred to Mrs. Rosa B. Brantley. Wilson alleges that this was done fraudulently and to prevent him from securing the same; that the entire scheme to rent the land to the Barrons for the year 1937 and to transfer and assign the rent note to Mrs. Brantley is a "wholly fictitious, bogus, and non bona fide transaction, and is a part of the scheme and conspiracy on the part of Crockett and Mrs. Brantley to defraud Wilson out of the 1937 rents and profits of said place and to defeat his rights in the premises;" that Crockett is hopelessly insolvent and unable to respond in damages; that Mrs. Brantley has paid no money and parted with nothing of value in consideration of the transfer and assignment of the rent note to her; that the transaction was fictitious, bogus, and void; that Mrs. Brantley is insolvent; that Crockett has undertaken to cut the timber on the land, and is now threatening to cut and sell all the marketable timber; that the land is deteriorating in value, not worth the amount of the debt owing thereon; that the buildings are in bad repair and being allowed to fall down, and no repairs are being made to keep up the place; and that Crockett has no meritorious defense to the suit on the notes. The prayers are that Mrs. Brantley be made a party; that a receiver be appointed to take charge of the land, with authority to rent it for the year 1937, to collect the rents and hold them subject to the order of the court; that Crockett and Mrs. Brantley be required to surrender the Barron note and rent contract; that the same be impounded in court and canceled as null and void; and that Crockett and his agents and employees be enjoined from exercising any possession or control of said land, and from cutting the timber, wood, and fences.

Crockett and Mrs. Brantley filed general demurrers, which were not passed on. Crockett filed an answer to the cross-petition of Wilson, in which he set out the alleged parol agreement with Wilson and the tentative sale of the land to the Barrons, substantially as stated above. He denied that he was insolvent to any greater extent than when he purchased the land in 1923. He averred that Mrs. Brantley was not insolvent; that he made valuable improvements on the place; and that the land is more

valuable than when he purchased it in 1923. He admitted that he failed to pay the taxes as alleged, but stated that if Wilson had carried out the alleged agreement it would not have been necessary for him to pay the taxes. Crockett further averred that he was making an effort during the year 1935 to sell the place, as it was necessary, in order for Crockett to realize a little on the equity which he had in the land, to get the indebtedness on the place in a satisfactory and definite shape and an extension on the maturity of a large portion of the debt; and that the transfer of the rent note to Mrs. Brantley was a bona fide transaction as security for a debt owed to her by Crockett. Mrs. Brantley filed an answer denying that she is insolvent, and averring that she held the rent note as security for a debt owed her by Crockett. The case was submitted to the judge on the sworn pleadings and three affidavits as to the improvements and lack of improvements on the land, the value of the land, etc. The following judgment was entered: "After hearing the evidence in this case, it is ordered that the restraining order granted on the cross-bill is continued until further order, and ordered that James L. Keen Jr. be and is appointed receiver of the property therein described until further order, and is required to rent the farm for 1937 at seven hundred dollars, the present tenants to have the preference at that price. That the case in the city court be enjoined, and the parties are required to try all the issues in this court."

To this judgment Crockett excepted. As appears from the preceding statement, Wilson was undertaking to sue on certain notes to judgment, with a special lien on the land for the purchase-price of which the notes were given. The purchaser undertook to set up a subsequent agreement which would have given him more time within which to pay for the land and to secure a purchaser therefor. It was alleged by Wilson that this suit was being delayed needlessly by Crockett, that the land was deteriorating in value, the taxes had not been paid, and that Crockett had rented the land to other parties, secured a rent note for $700, which note had been transferred for the purpose of defrauding Wilson, who asked the court, under these circumstances, to grant a receiver to take charge of the property, and to collect and impound the rents until the case could be heard and determined on its merits. "When any fund or property may be in litigation, and the rights of either

or both parties can not otherwise be fully protected, or when there may be a fund or property having no one to manage it, a receiver of the same may be appointed (on a proper case made) by the judge of the superior court having jurisdiction thereof, either in term time or vacation. A receiver is an officer of the court." Code, §§ 55-301, 55-305. In the appointment of a receiver the court has a discretion; and unless this discretion is manifestly abused, this court will not interfere. *Mobley* v. *Brundage,* 170 *Ga.* 829 (2) (154 S. E. 452); *Brosseau* v. *Jacobs' Pharmacy Co.,* 144 *Ga.* 104 (86 S. E. 232). "Large discretion is vested in the chancellor in granting injunctions and appointing receivers; and unless some principle of substantial equity has been violated, this court will not control his discretion, . unless clearly abused." *Jones* v. *Johnson,* 60 *Ga.* 260 (3).

In *Mitchell* v. *LaGrange Banking & Trust Co.,* 166 *Ga.* 675 (2) (144 S. E. 267), this court held: "It is not error to appoint a receiver to take charge of the demised premises and collect the rents, issues, and profits thereof pending litigation, upon the application of the grantee of the security deed thereto, over the objection of the widow of the grantor, who claims the equity in such premises as a year's support, where an inspection of the record shows no description of said realty adequate for its identification, and there is evidence authorizing the judge to find that waste is being committed, that there is uncertainty whether the property pledged is of adequate value to pay the debt and accumulated interest, that the taxes upon the property have not been paid, and that the party in possession is insolvent." This ruling applies to the facts of the instant case. The ruling in *Gunby* v. *Thompson,* 56 *Ga.* 316 (2), is also applicable to the facts. There it was held: "When the vendee of property is insolvent and is receiving the rents and profits, the vendor having retained the title to secure the payment of the purchase-money, a receiver will be appointed to take charge of the property, and to hold the proceeds thereof until final decree." Crockett admits his insolvency. He says he is as solvent as he was when he purchased the land in 1923.

While the briefs discuss other questions, as we view this case the only question involved is whether the judge abused his discretion in appointing a receiver. The sole exception is to the appointment of a receiver; and while the bill of exceptions recites

that the court erred in not dismissing the case on demurrer, the court did not pass on the demurrers, and that question is not for decision by this court. Under the pleadings and the evidence the judge did not abuse his discretion in appointing a receiver to take charge of the rents pending the outcome of the case on its merits.

*Judgment affirmed. All the Justices concur.*