PRUDENTIAL INSURANCE COMPANY *v.* BYRD *et al.*
BLACKBURN *v.* PRUDENTIAL INSURANCE COMPANY
*et al.*

Nos. 12701, 12737. JULY 17, 1939.

*King, Hitz & Partridge,* for plaintiff.

*Robert B. Blackburn* and *Hooper & Hooper,* for defendants.

REID, Chief Justice. The Prudential Life Insurance Company of America obtained an appointment of a receiver for certain property conveyed by a security deed, ancillary to and in aid of its suit for a judgment on the debt secured thereby, based upon the alleged insolvency of the defendants, Mr. and Mrs. Byrd, and the inadequacy of the security. See *Mitchell* v. *LaGrange Banking & Trust Co.,* 166 *Ga.* 675 (144 S. E. 267) ; *Gunby* v. *Thompson,* 56 *Ga.* 316; *Crockett* v. *Wilson,* 184 *Ga.* 539 (192 S. E. 19) ; *Hart* v. *Respess,* 89 *Ga.* 87 (14 S. E. 910). The appointment of the receiver was reversed by this court (*Byrd* v. *Prudential Insurance Co.,* 182 *Ga.* 800, 187 S. E. 1)., and the trial court adjudged, in making the judgment of this court the judgment of the court below, that "Mrs. Cora M. Byrd (the actual owner of the property conveyed by the security deed) is entitled to have paid over to her all moneys so collected and now in the custody of the receiver, . . free from any and all costs incident to the appointment of the receiver and all court proceedings relating or pertaining thereto, which costs are taxed against the Prudential Insurance Company of America." The specific amount to which Mrs. Byrd was entitled under this judgment was to be thereafter ascertained upon the receiver filing his report; and although the receiver duly filed his report, no further judgment was rendered in this connection, and the matter remained in abeyance. In the meantime, upon a new hearing of the prayers for receiver-

ship under the allegations of the original petition, and under additional allegations added by amendment presented to the trial judge on the same day the remittitur was filed in the lower court, a receiver was again appointed for the property, the court naming the same person originally appointed. The evidence was different from that produced at the original hearing, and on writ of error this judgment was affirmed. *Byrd* v. *Prudential Insurance Co.,* 185 *Ga.* 310 (195 S. E. 403). Thereafter the plaintiff obtained judgment against the defendants for principal, interest, and attorney's fees; and judgment was thereupon entered, making the receivership permanent. The verdict and judgment in favor of the plaintiff on the indebtedness was affirmed by this court. *Byrd* v. *Prudential Insurance Co.,* 185 *Ga.* 625 (196 S. E. 72). Under order of the court the property was sold to the plaintiff as the highest bidder, but for an amount less than its judgment. The receiver made a final report showing a small cash balance in hand, which represented the difference between the amount of rents collected and the expenditures actually made under the first and erroneous receivership, and also a cash balance of rents collected under the second receivership. Mrs. Byrd's attorney, Robert B. Blackburn, intervened in his own behalf, and applied to the court to impress an attorney's lien in his favor against the amount that should be awarded Mrs. Byrd under the judgment vacating the first receivership (which is quoted in part above), for services rendered by him as her attorney. The plaintiff resisted this claim. The judge, after hearing evidence, allowed certain expenditures made by the receiver from the fund, disallowed others, and decided in favor of Blackburn in the amount found due to Mrs. Byrd, as a reasonable compensation for his services in her behalf. Blackburn and the Prudential Insurance Company each took a bill of exceptions to this judgment. For convenience the cases may be disposed of together.

■ In this State an attorney at law is given a special lien, superior to all other liens except liens for taxes, on judgments and decrees for money and "for the recovery of real or personal property" obtained for their clients. Code, § 9-613. While it is the rule in some States that an attorney has no lien for rendition of services in successfully defending his client's title to real or personal property against an adverse claim thereto (King v. Acuff, 218 Ala. 619, 119 So. 833; Owens *v.* Gunther, 75 Ark. 37, 86 S. W. 851, 5 Ann.

Cas. 130; Avery v. Via, 225 Ky. 155, 7 S. W. (2d) 1057; Butler v. Givens, 137 Tenn. 438, 193 S. W. 1063; Morey v. Schuster, 145 N. Y. Supp. 258, affirmed, 217 N. Y. 639; Elliot v. Orton, 69 Okla. 233, 171 Pac. 1110, L. R. A. 1918E, 103), in this State the contrary rule applies. Code, § 9-613, par. 5. In *Fry* v. *Calder*, 74 *Ga.* 7, it was held: "Attorneys who were employed to resist the liens claimed by mechanics and contractors on real estate, amounting to five or six hundred dollars, and who succeeded in reducing the recovery to about sixty dollars, had a lien for their fees upon such property as against the owner who employed them. The reduction of the claims against the property was equivalent to a recovery to that extent." In *Dyal* v. *Watson*, 174 *Ga.* 330 (162 S. E. 682), it was held that attorneys who were employed to represent a non-resident defendant against whom an equitable action had been brought by a creditor, wherein certain property, the equitable title to which was in the defendant, had been attached and seized by the sheriff acting in the nature of a receiver, were entitled to a lien on the property where the plaintiff, upon being unable to meet a demurrer pointing out that the cause of action declared upon was barred by the statute of limitations, voluntarily dismissed the action. See also *Lovett* v. *Moore*, 98 *Ga.* 158 (26 S. E. 498); *Strohecker* v. *Irvine*, 76 *Ga.* 639 (2 Am. St. R. 92). Under the judgment vacating the original receivership of the property, as above quoted in part, Mrs. Byrd became entitled, not only to the actual balance of the rents then in the hands of the receiver, but also to be made whole as to any illegal expenditures made from this fund. This judgment was final as to the rights of the parties to these rents, though it was necessary thereafter to determine the exact amount due Mrs. Byrd. It is true that upon the judgment of this court reversing the judgment appointing a receiver being made the judgment of the court below, the plaintiff was entitled to a new hearing for a receiver under the allegations of the original petition, by which it asserted an equitable claim to the rents from the property (185 *Ga.* 310, 314, supra); and it is further true that the plaintiff filed an amendment to its petition when the remittitur was filed in the lower court, and before the date of the judgment making the judgment of this court the judgment of the court below, setting up the conveyance of the rents to it by the terms of the security deed. However, instead of seeking to have the court

retain the fund under its claims, the plaintiff sat quietly by, and without objection or exception permitted a judgment to be thereafter entered, expressly adjudging that the defendant was entitled to the fund. It seems clear that whatever rights the plaintiff may have had to these funds under the security deed were foreclosed by the terms of this judgment. The case of *Field* v. *Jones,* 10 *Ga.* 229, 11 *Ga.* 413, 418, is clearly distinguishable upon its facts. In that case the fund collected under the erroneous receivership was expressly held by the court and made subject to the new receivership upon the claim made thereto, and no judgment was entered in the face of such subsequent claim, awarding the fund to the defendant, as in the present case.

While the appointment of a receiver for property on behalf of one holding a security deed thereto, in aid of a suit upon the indebtedness, does not determine the rights of the parties or adjudicate the issue of right and title to the property or the income thereof, the purpose of a receivership being merely to preserve the property and the income, pendente lite, to await the final judgment of the court (*Dickson* v. *Hutchinson,* 173 *Ga.* 644, 161 S. E. 139; *Ballin* v. *Ferst,* 55 *Ga.* 546), a judgment rendered in such proceeding in effect releasing to the defendant the income of the property as against the claims of the plaintiff, as was done in the present case, amounts to a recovery of such a judgment in favor of the defendant by his attorney as will entitle such attorney to a lien thereon for the reasonable value of his services, under the principles heretofore set out. In these circumstances it would be proper for the court as a court of equity to award Mrs. Byrd, not only the actual balance in the hands of the receiver under the first and erroneous receivership, but so much of the balance of the rents held under the subsequent receivership (which would otherwise be payable to the plaintiff to be applied on its judgment) as was necessary to make her whole as to any illegal expenditures made from the rents under the first receivership, for which the plaintiff was chargeable. This being true, we see no reason why the court could not, upon motion of the defendant's attorney in said case, the defendant consenting thereto, impress the lien of her attorney on the fund to which she was entitled. See *Merchants National Bank of Rome* v. *Armstrong,* 107 *Ga.* 479 (33 S. E. 473) ; *Pharr* v. *McDonald,* 180 *Ga.* 777 (180 S. E. 844) ; 6 C. J. 794, § 408. The fact

that the plaintiff, after the judgment awarding Mrs. Byrd these rents was rendered, obtained a judgment against her on the indebtedness gave it no superior rights to the fund over the lien of her attorney for his services in recovering this amount for her. The lien of a judgment does not attach to money (*Fidelity & Deposit Co.* v. *Exchange Bank of Macon,* 100 *Ga.* 619, 28 S. E. 393) ; and whatever rights the plaintiff as a judgment creditor may have had, as against the defendant, to this fund, they were inferior to the claim of her attorney. It is to be borne in mind that the attorney is asserting a statutory lien against a fund recovered on behalf of his client. He is not claiming any right to be compensated for services rendered in bringing a fund into court, or for the preserving, protecting, or increasing of a common fund, within the principle of such cases as *Eckford* v. *Atlanta,* 173 *Ga.* 650 (160 S. E. 773) ; *Christian Women's Benevolent Asso.* v. *Atlanta Trust Co.,* 181 *Ga.* 576 (183 S. E. 551) ; *Mohr-Weil Lumber Co.* v. *Russell,* 109 *Ga.* 579 (34 S. E. 1005) ; *Ober & Sons Co.* v. *Macon Construction Co.,* 100 *Ga.* 739 (28 S. E. 388), relied on by counsel for the plaintiff. The attorney performed no such services, and the case presented is totally different from the cases above cited. In such a proceeding the attorney proceeds on his own behalf, and not through his client. It accordingly follows that the judge did not err in refusing to dismiss the petition on the ground that the right to proceed was in Mrs. Byrd, and not in her attorney.

■ Blackburn claimed also a lien on rents collected by the receiver during the period between the date when his original appointment was vacated and the date of his subsequent appointment as receiver for the same property. There was ample evidence before the judge that the receiver collected these rents with the consent of all the parties, pending the new hearing for the appointment of a receiver, to be subject to administration by the new receiver if thereafter appointed ; and there was no error in the judge's ruling that these rents belonged to the plaintiff, and not to Mrs. Byrd.

■ In determining the amount which Mrs. Byrd was entitled to recover and on which the lien of her attorney could be impressed, the court allowed certain expenditures made by the receiver pending the erroneous receivership, and disallowed others. In case 12737 Blackburn excepted to the allowance of any of these expen-

ditures; and in case 12701, the plaintiff, besides contesting the right of Blackburn to any amount, excepted to that part of the judgment disallowing certain expenditures. Except perhaps in cases where the court appointing a receiver is entirely wanting in jurisdiction as a court, or where the action of the plaintiff in procuring the appointment of a receiver was wrongful and malicious, as a general rule the costs, expenses, and disbursements incurred by a receiver whose appointment was improvidently and erroneously made will, upon equitable principles, be charged by the court making the appointment against the property to the extent that they have inured to its benefit. Speakman v. Bryan, 61 Fed. (2d) 430; Jackson v. H. M. Wade Mfg. Co., 105 Fla. 560 (142 So. 228); Bushman v. Barlow, 328 Mo. 90 (40 S. W. (2d) 637); State v. Bank, 197 Mo. 605, 613 (95 S. W. 867); State v. Thomas, 249 Mo. 103 (155 S. W. 401); Doggett v. Johnson, 79 Mont. 499 (257 Pac. 67); Hickey v. Parror &c. Co., 32 Mont. 143 (79 Pac. 698); Ogden City v. Bear Lake &c. Co., 18 Utah, 279 (55 Pac. 385); Rex Refining Co. v. Morris (Tex. Civ. App.), 75 S. W. (2d) 156; Brundage v. Home Savings & Loan Asso., 11 Wash. 288 (39 Pac. 669).

Where the appointment of a receiver was wrongful, and the plaintiff's efforts were malicious, the court should tax all costs and disbursements against the plaintiff. The situation is different where the appointment was wrongful and the efforts of the plaintiff were not malicious but instituted in good faith. The fact can not be overlooked that the appointment of a receiver is not the act of the plaintiff, but is the act of the court; and that the administration of the property by the receiver is not that of the plaintiff, but is the court's administration. Upon dissolution of an order appointing a receiver as erroneous, ab initio, the owners of the property have the right to have restoration of the property, and to be made whole from losses sustained as a result of the administration. On this point Judge Hutcheson, of the Fifth Circuit Court of Appeals, in Potts & Co. v. Cochrane, 59 Fed. (2d) 375, made the following illuminating remarks: "The district court should have, upon the issues joined, fully canvassed the situation from the standpoint of determining where the equities lay, to adjudge accordingly. Such a proceeding is purely equitable; it should have been decided on equitable grounds. Each case of this kind rests upon its own

facts. In each such case the decree, one in which equity disposes of an awkward situation arising, not from intentional fault on the part of the plaintiff, but from error of judgment, should be arrived at with the overruling purpose in mind to protect from loss an owner of the seized fund who has not so acquiesced in its administration as to make it equitable to charge the fund with its expense; but since protection and not advantage is the end desired, the plaintiff causing the receivership may not be charged with those disbursements which have inured to the benefit of the fund, or which, whether resulting in actual benefit or not to it, do not represent losses, because the fund would have had to pay them if administered by the rightful owners."

Thus, it is generally held that the fund collected should be charged with items of expense that would have been reasonably necessary if the property had not been taken from the owner under the receivership; such as the expenses of taxes, insurance, water service, electric power, necessary and legitimate repairs. See cases above cited. On the other hand, expenses such as commissions for collecting rents, or for securing leases on the property, unless it is reasonably shown as to such items that the owner would have engaged an agent for that purpose if the receiver had not been appointed, and other expenses directly attributable to the receivership, such as receiver's fees, receiver's bond, etc., are not generally to be charged to the fund. See *Elna Steel & Iron Co.* v. *Hamilton*, 133 *Ga.* 85 (65 S. E. 145); *City Bank & Trust Co.* v. *Graf*, 177 *Ga.* 236 (170 S. E. 74); *Capital City Tobacco Co.* v. *Anderson*, 138 *Ga.* 667 (75 S. E. 1040); *Morgan* v. *Boyles*, 169 *Ga.* 743 (151 S. E. 366). Accordingly, we do not think the court erred in allowing the expenditures for taxes assessed against the property for the years 1933, 1934, 1935, which were due and unpaid by the defendants at the time the receiver was appointed. And this is true although the payments were made to the plaintiff by virtue of its having paid these taxes in order to fully protect its interest in the property under the security deed. The defendants proved no valid defense to these taxes, and they certainly constituted an equitable claim upon this fund. The items of $250 paid to Mrs. Byrd by the receiver, and $174 in repairs made on the property at her request, were also allowed. The correctness of the judgment in this particular is not open to argument.

It appears that the receiver actually expended $634.02 for repairs, and that of this amount $174 was expended on repairs requested by Mrs. Byrd, which amount, as above indicated, was charged against the fund. The remainder of the sum spent on repairs was disallowed. As we have already indicated, in a case of the present character legitimate and necessary repairs made on the property should generally be allowed against the fund collected pending the erroneous receivership.

The character of the repairs made, as represented by some of the items making up the sum of $634.02, was not inquired into at the hearing. As to other items the character of the repairs made was shown, but no showing was made as to the necessity of the repairs or the reasonableness of the expenditures made therefor. In these circumstances we can not say that the judge erred in disallowing these expenditures. The burden rested on the plaintiff corporation, which erroneously caused the appointment of the receiver, to show clearly that the expenditures were proper and chargeable against the defendant. On it rested the affirmative in this matter, and it does not appear that the burden was carried in this instance. Nor do we think, except in one instance which will be pointed out later, that the evidence introduced required the judge to find that Mrs. Byrd or her attorney gave such consent to any of the repairs represented by the items disallowed that they should have been charged to the fund. For the most part the receiver's testimony as to obtaining the consent of Mrs. Byrd or her attorney was not clear. He merely testified that he believed or thought that he did obtain the consent of Mrs. Byrd or her attorney, when questioned as to the several items. The receiver's testimony also indicates that the nature of the approval secured from Mrs. Byrd's attorney was merely that he thought that under the order appointing the receiver he (the receiver) had the right to make necessary repairs. Of course, this sort of consent would not make the items referred to chargeable to the fund without respect to their necessity and their reasonableness. What has been said above is applicable to all of the items which the court disallowed, except an item of $210.50 paid to M. G. Couch Co., on June 29, 1936. While the evidence does not show what repairs this item represented, the testimony of the receiver, which was not contradicted, was positive to the effect that Mrs. Byrd consented to and co-operated with him

in making these repairs, and in fact was so pleased at getting this work done at such a reasonable price that she indicated a desire to have similarly repaired another store making up the property in litigation. Therefore this item should have been allowed.

It appears further that the judge also disallowed an expenditure of $33.75, which appears to have been paid to real-estate agents as commissions for procuring leases on the property, and an expenditure of $294.07, paid by the receiver to himself as commissions. It follows from what we have said that this was not error. The rulings of the judge were correct, with the exception of the item of $210.50. It follows that the judgment should be affirmed on the bill of exceptions brought by Blackburn in case number 12737, wherein exceptions are taken thereto on the ground that additional sums should have been awarded. On the exceptions taken by the Prudential Insurance Company of America in case number 12701, the judgment is affirmed, provided that Blackburn write off from said judgment in his favor the sum of $210.50; otherwise the judgment is reversed.

*Judgment affirmed in case number 12737; affirmed on condition in case number 12701. All the Justices concur.*